# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6135 | **DATE** | 9/22/2000 |
| **CASE TITLE** | Royal MacCabees Life Ins vs. Leon Malachinski | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation regarding Plaintiff's Motion to Compel (99-1) and for Sanctions (99-2) is hereby submitted to Judge Guzman. This Court recommends that Plaintiff's Motion to Compel be granted in part and denied in part and that the Motions for Sanctions be granted in part and denied in part. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | **3** number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 5 2000 date docketed | |
| | Docketing to mail notices. | | | *155* |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 9/22/2000 date mailed notice | |
| VKD courtroom deputy's initials | | ED-7 FILED FOR DOCKETING 00 SEP 22 PM 4: 07 Date/time received in central Clerk's Office | VKD mailing deputy initials | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ROYAL MACCABEES LIFE )
INSURANCE COMPANY, )
                )    No. 96 C 6135
     Plaintiff/Counter-Defendant )
                )    Judge Ronald K. Guzman
       v.               )
                )
LEON S. MALACHINSKI, D.O., )     Magistrate Judge
a Texas Corporation, )     Arlander Keys
                )
     Defendant/Counter-Plaintiff. )

TO:   THE HONORABLE RONALD K. GUZMAN
       UNITED STATES DISTRICT COURT JUDGE



DOCKETED

SEP 25 2000

### REPORT AND RECOMMENDATION

Currently before the Court are Plaintiff's Motion to Compel, Motion for Sanctions, and Motion for Additional Sanctions. For the reasons set forth below, this Court recommends that the Motion to Compel be granted in part and denied in part, and that the Motions for Sanctions be granted in part and denied in part.[1]

### Background Information

Before setting forth the relevant procedural history of this case, the Court finds it appropriate to comment on defense counsel's representation. In its years of federal judicial

---

[1] The Motions for Sanctions are inextricably tied to the Motion to Compel and this Court's prior orders pursuant to an earlier Motion to Compel. The Court's rulings on the Motions to Compel are subject to review by the District Court under the abuse of discretion standard. However, because these Motions include requests for <u>sanctions</u>, based in part on Defendant's refusal to comply with the Court's prior orders, the entire matter is being submitted to the District Court as a Report and Recommendation.

155

experience, this Court has never encountered such flagrant disregard for the authority of the Court and the judicial process as that demonstrated by Dr. Malachinski's lead counsel in this case.[2] Defense counsel repeatedly missed scheduled court appearances, ignored court orders, requested numerous extensions and filed several baseless motions to reconsider, unnecessarily and vexatiously delayed discovery, and offered incredulous explanations for their unacceptable behavior.

By way of example, in the nine months between March 15, 1999 and December 27, 1999, defense counsel failed to appear for scheduled court appearances without adequate notice to opposing counsel or the Court on no fewer than five occasions.[3] On occasion, defense counsel was not content with simply ignoring

---

[2] Dr. Malachinski is represented by two attorneys from separate law practices. One of the attorneys identified himself as lead counsel. While it was lead counsel who engaged in most of the unacceptable conduct to be described herein, co-counsel cannot be held entirely blameless, as he failed to disavow such conduct or to distance himself from the tactics of lead counsel. Notwithstanding the serious questions raised by the conduct of lead counsel in this case, the Court is unable to conclude, definitively, that such conduct rose to the level of contempt or that counsel deliberately misrepresented facts to the Court. The Court has given counsel the benefit of all doubts in this regard. Moreover, because of the possible ramifications of this Report and Recommendation, the Court finds that no useful purpose would be served by identifying the two attorneys by name, but will refer to them as "lead counsel," "co-counsel," or collectively as "defense counsel."

[3] Defense counsel failed to appear for status hearings on March 15, 1999, April 12, 1999, September 3, 1999, November 15, 1999, and December 27, 1999. This does not include the numerous instances when defense counsel arrived late to Court.

scheduled dates, but would proceed to offer transparent and convenient fabrications in an attempt to explain their absences.

At a January 5, 2000 status hearing, for example, co-counsel explained that his failure to appear at a scheduled December 27, 1999 status hearing was an unintentional oversight, and that he had simply "miscalandar[ed]" the date. (01-05-00 Tr. at 2). During that same status hearing, however, counsel implied that, perhaps, he would have graced the Court with his presence at the December 27th status had he realized that the issue of expert witnesses was to be discussed, indicating that he failed to attend the December 27th status because he was unimpressed with the anticipated discussion. (*Id.* at 22).

Lead counsel's behavior throughout discovery was both egregious and abysmal. By interjecting numerous, unnecessary objections throughout at least one of Defendant's multiple depositions, lead counsel not only hindered and delayed Plaintiff's ability to depose Defendant, but also made it necessary for this Court to rule upon such trivialities as whether Defendant "read" certain documents.[4] Lead counsel's behavior resulted in the imposition of sanctions, which are discussed later in this report.

Lead counsel resorted to dilatory tactics in an effort to

---

[4]*See* Transcript of the aborted August 3, 1999 deposition of Dr. Malachinski, attached to Plaintiff's Motion for Orders of Additional Sanctions, and counsel's explanations for his conduct during that deposition. (08/11/99 Tr. at 4.)

obtain discovery to which he was not entitled. When Plaintiff's counsel refused to submit to defense counsel requested extraneous documentation regarding its expert witnesses, lead counsel attempted to derail a scheduled expert witness deposition. Lead counsel appeared in Court on November 18, 1999, the day of the scheduled deposition, claiming that he could not proceed with the deposition because he had oral surgery scheduled for later that same day. (11-18-99 Tr. at 23). Moreover, counsel admitted that he had scheduled the surgery on October 29, 1999, after Plaintiff's counsel had informed him that the expert would be available to be deposed on November 18, 1999, and after he had initially indicated that November 18th would be an acceptable date. (Id. at 37).[5]

At a status hearing on January 12, 2000, lead counsel: 1) first represented that he had not received certain motions until January 10, 2000 and then, inexplicably, admitted that he had received them on January 7, 2000 (01-12-00 Tr. at 4-5); and 2)

---

[5] Lead counsel offered to show the Court his cracked tooth and suggested that the Court call his dentist to verify his claim. The offer was declined. (11-18-99 Tr. at 26-27). When counsel revealed that he had scheduled the surgery weeks earlier, he proffered documentation--that Plaintiff's counsel claims he never received and which he claims was fabricated--to establish that he never formally committed to November 18, 1999 as a deposition date. (Id. at 19, 31-33). However, despite prior notice of Plaintiff's motion to proceed with the depositions on November 18th, defense counsel failed to show up in court for that motion and waited until the eleventh hour to inform the Court that lead counsel had allegedly scheduled oral surgery back on October 29, 1999--after he had received notice that the expert was available to be deposed on November 18, 1999. (Id. at 37; 11/15/99 Tr. at 2-4.)

requested an additional seven days to determine why his client had not turned over tax returns, an issue on which the Court had issued an order several months earlier. (01-12-00 Tr. at 5.)

Finally, throughout the pendency of this case, defense counsel have continuously insisted that Dr. Malachinski has severe, disabling psychiatric problems, and that he is virtually destitute. (See, e.g., 08-11-99 Tr. at 12-13). For example, after Dr. Malachinski had arrived at one of his depositions without required documents, lead counsel later explained to the Court that he had instructed Dr. Malachinski to bring the documentation, but that Dr. Malachinski's memory and other psychiatric problems made it difficult for lead counsel to get needed materials from Dr. Malachinski. According to counsel, Dr. Malachinski would assure counsel that he was on his way to counsel's office with the required documents, but Dr. Malachinski would arrive without them, even forgetting why he came to counsel's office in the first place (08-11-99 Tr. at 12-13).

Moreover, defense counsel represented that Dr. Malachinski -- who has two children in his care -- was so afraid to come out of his home that he had become a virtual recluse. At his August 3, 1999 deposition, Dr. Malachinski testified that he was then wearing a bulletproof vest. Because Dr. Malachinski allegedly feared for his life when he went out in public, counsel requested that Dr. Malachinski's deposition be taken in this Court's courtroom. The

request was granted.

Despite Dr. Malachinski's alleged psychiatric and severe memory problems, including his extreme fear of appearing in public, defense counsel believed it prudent to use Dr. Malachinski as a medical consultant in matters pending before other courts. (08-11-99 Tr. at 13-15). Notably, in order to render such services, Dr. Malachinski was required to attend very public court proceedings. Even more remarkable is defense counsel's insistence that they did not pay Dr. Malachinski for his medical consults.

Defense counsel and Dr. Malachinski's medical consulting arrangement raises a number of serious questions. As an initial matter, the Court questions how defense counsel can represent to this Court that Dr. Malachinski's psychiatric condition is so severe as to be disabling, while counsel continues to utilize him as a medical consultant in other pending matters? In response, defense counsel suggest that they merely utilized Dr. Malachinski as a medical consultant as a kindness to Dr. Malachinski. It is difficult for the Court to characterize as a "kindness" defense counsel's request that a client--who is allegedly so fearful of appearing in public that he has become a virtual recluse and wears a bulletproof vest when he leaves home--attend public court proceedings on behalf of counsel. (08-11-99 Tr. at 14).

Similarly, the Court has trouble reconciling counsel's representations that Dr. Malachinski is virtually destitute with

6

counsel's statement that they are not paying Dr. Malachinski for his medical consultation services. The Court is baffled as to why Dr. Malachinski, who is allegedly unable to pay his utility bills, certain litigation expenses, and minimal sanction awards, would agree to such an arrangement. (11-18-99 Tr. at 52). The obvious conclusion that perhaps Dr. Malachinski agreed to render such services in lieu of paying his attorneys is weakened by defense counsel's insistence that they are representing Dr. Malachinski on a purely contingency basis. Without drawing any conclusions, the Court seriously questions not only the veracity of defense counsel's explanations, but also whether defense counsel's arrangement with Dr. Malachinski creates a possible conflict of interest.[6]

The Court now turns to the relevant procedural history.

## Procedural History

The three motions currently before the Court all stem from Defendant's abuse of the discovery process and repeated failures to respond to Court orders. On August 9, 1999, Plaintiff filed a Motion for an Order Compelling Discovery and Imposing Sanctions. Plaintiff's motion detailed Defendant's repeated refusals to answer questions at his depositions -- often with the assistance of and/or prompting by lead counsel -- by claiming that he did not understand

---

[6]It is certainly conceivable that counsel could be called as witnesses at trial regarding these matters, which would create an ethical dilemma for them.

basic terms such as execute, sign, and practice medicine. This type of conduct, among other things, necessitated scheduling six depositions for Defendant. Despite the repeated opportunity to do so, Defendant consistently failed to bring requested documentation to his depositions.

On August 11, 1999, the Court--finding that the aborted August 3, 1999 deposition was worthless--granted Plaintiff's motion, awarding Plaintiff the amount of $500.00, the costs of the deposition. The Court reserved judgment on the issue of whether Defendant should also be liable for additional costs and fees. In addition, the Court ordered Defendant to produce within seven days his income tax records and supporting documentation for the years 1997 and 1998, and all records kept by Defendant with regard to his medical consultation work for defense counsel in *D'Acquisto v. Lutheran General Hosp.*, Case No. 92 L 3820. Defendant failed to submit the above referenced documentation by August 18, 1999.

On November 15, 1999, after Defendant repeatedly failed to pay the $500.00 award for the August 3, 1999 deposition, the Court increased the amount of the award to $1,840.08 to cover Plaintiff's related attorneys' fees and costs. Three days later, on November 18, 1999, the Court ordered Defendant to pay the increased award amount on or before November 30, 1999, or face additional, daily sanctions. As of the date of this opinion, Defendant has not yet tendered the sanction award to Plaintiff.

In late November, 1999, Defendant deposed Plaintiff's two expert psychiatric witnesses for approximately eleven hours. On December 21, 1999, Plaintiff submitted to Defendant the experts' bill for services rendered in connection with the depositions for immediate payment. Defense counsel allegedly informed Plaintiff's counsel that he would notify Plaintiff's counsel by January 5, 2000 as to whether Defendant would be willing to pay the experts' fees. Defendant failed to contact Plaintiff on or before January 5, 2000 regarding this matter.

In the interim, on December 27, 1999, defense counsel failed to appear at a scheduled status hearing at which they were to disclose Defendant's expert witnesses. In Defendant's absence, the Court entered an order closing discovery and barring Defendant from presenting an expert witness at trial. On January 3, 2000, defense counsel filed a motion to vacate the Court's December 27th Order, asking that Defendant be allowed additional time to submit the names of its expert witnesses. The Court denied Defendant's motion on January 5, 2000.

On January 10, 2000, Plaintiff filed a Motion to Compel and for Sanctions, requesting that the Court enter an order compelling Defendant to pay the expert witness fees. Moreover, Plaintiff argued that, because Defendant had not yet paid the sanctions award ordered by the Court in August, 1999 and again in November, 1999, the Court should strike Defendant's Answer to Plaintiff's

Complaint, dismiss Defendant's counterclaim against Plaintiff, and award Plaintiff its attorneys' fees incurred in drafting the January 10, 2000 motion.

Also on January 10, 2000, Plaintiff filed a Motion to Issue a Rule to Show Cause against Defendant, claiming that Defendant still had not tendered his income tax records and supporting documentation for the years 1997 and 1998, or the records kept in connection with his medical consultation in the *D'Acquisto* matter. Plaintiff requested that the Court enter an order barring Plaintiff from denying that he was in attendance during the entire course of the *D'Acquisto* trial proceedings, and to award Plaintiff its attorneys' fees incurred in drafting the motion.

Defendant replied to Plaintiff's Motion to Compel and for Sanctions on January 12, 2000.[7] Defendant argued that Plaintiff's experts' rate of $600 per hour was excessive, noting that the experts testified at their depositions that their rate was only $150 per hour, and that Defendant's experts were awarded a considerably lower hourly rate by another court in this District. In addition, Defendant argued that the $600 rate was so excessive as to be unconscionable, and asked the Court not to "overlook the abusive expert fees."

---

[7] Defendant's motion was entitled Motion to Adjudicate Plaintiff's Experts' Fees, which the Court construed as Defendant's Response to Plaintiff's Motion to Compel and for Sanctions.

On January 12, 2000, the Court denied Plaintiff's Motion to Issue a Rule to Show Cause without prejudice. The Court further ordered Defendant to produce to Plaintiff his 1997 and 1998 tax returns and supporting documentation by January 19, 2000, or file an affidavit by that same date stating that he did not file such returns and does not have supporting documentation. In addition, the Court once again ordered Defendant to produce his records with respect to the *D'Acquisto* matter or file an affidavit stating that he destroyed those records and identifying the date on which he destroyed the records.

On March 20, 2000, Plaintiff filed a Motion for Additional Sanctions based upon Defendant's failure to pay the $1,840.08 sanctions award and his inadequate submission regarding the *D'Acquisto* documentation. Defendant responded to Plaintiff's motion on April 5, 2000. At the end of his response, co-counsel conceded that Defendant had forwarded to him $1,840.08 that day. Despite the Court's numerous orders and warnings directing Defendant to forward this payment to Plaintiff immediately, defense counsel has yet to submit this payment--which has been in his possession for more than five months--to Plaintiff.[8]

---

[8]In his response to the Motion for Additional Sanctions, co-counsel suggested that, rather than incur the "further wrath of this Court," he would hold the money in escrow, under protest, pending the outcome of his forthcoming objections to this Court's Order before the District Court.

## Discussion

## I.  Motion to Compel and For Sanctions.

Plaintiff initially asks the Court to order Defendant to pay its experts' fees stemming from Defendant's deposition of Plaintiff's expert witnesses.  Defendant responds that the experts' fees are unreasonable, and that Plaintiff improperly attempts to recover for the time the experts spent preparing for their depositions.

Federal Rule of Civil Procedure 26(b)(4)(C)(i)provides that "[u]nless manifest injustice would result . . .[courts] shall require that the party seeking discovery pay the expert a reasonable fee for the time spent in responding to discovery." Compensating an expert for his deposition time is mandatory under Rule 26(b)(4)(C)(i), because it would be unfair to require one party to subsidize discovery for the opposing party. *Magee v. The Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 645 (E.D.N. Y. 1997). The mandatory nature of this Rule is tempered by two limitations: 1) the costs may not be imposed if doing so would result in manifest injustice;[9] and 2) the expert's fee must be reasonable.

---

[9] The advisory comments to Rule 26(b)(4) state that, when necessary and appropriate, a court may relieve an indigent party of its responsibility for paying costs under this Rule.  The Court declines to relieve Defendant of his responsibility to pay the permitted expert fees because 1) the Court seriously questions defense counsels' credibility with regard to Defendant's financial resources and other matters; and 2) defense counsel proceeded to depose two experts for eleven hours despite their knowledge of Defendant's alleged financial condition.

See *EEOC v. Johnson & Higgins, Inc.*, No. 93 Civ. 5481, 1999 WL 32909, at *4 (S.D.N.Y. Jan. 21, 1999)("[A] 'rich' party should not be allowed to agree to pay excessively high fees to its expert in order to prevent a 'poorer' opposing party from being able to afford to depose the expert.")

In determining whether an expert's fee is reasonable, courts have considered the following factors: 1) the expert's area of expertise; 2) the expert's necessary training and education; 3) the prevailing rates of comparable expert witnesses; 4) the nature, quality, and complexity of the discovery provided; 5) the cost of living in the relevant community; 6) the rate actually charged by the expert; 7) fees traditionally charged by the expert in related matters; and 8) any other factor likely to assist the court. *McClain v. Owens-Corning Fiberglass Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996).

The burden is on the petitioner to demonstrate that its expert's rate is reasonable. *Wilcox v. Dept. of Health and Human Serv.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Feb. 14, 1997). The petitioner need not submit evidence with respect to each factor; rather, courts require only reasonably specific documentation in support of the claim. *Id.* Where the parties offer scant evidence supporting their interpretation of the reasonable rate, the court may use its discretion in setting the rate for reimbursement. *McClain,* 1996 WL 650524, at * 4 (citing

13

*U.S. Energy Corp. v. Nukem, Inc.*, 163 F.R.D. 344, 346 (D. Colo. 1995)).

Plaintiff asserts that Defendant should compensate its experts $600 per hour for time spent at their respective depositions. The only evidence that Plaintiff offers that this rate is reasonable is its claim that this is what the experts charged for their services. Defendant counters that the $600 hourly rate is excessive. Defendant asserts that another court in this district allowed its expert -- a psychiatrist with similar or superior credentials -- to charge less than $100 per hour, and that Plaintiff's experts each conceded at their depositions that their hourly rates were $150. Notably, Defendant has not submitted any documentation to verify either of these assertions. In addition, Defendant attacks Plaintiffs' experts' credentials as being, at best, average.

A review of the relevant, albeit scant, case law reveals that Plaintiff's experts' $600 hourly rate is excessive. *McClain*, 1996 WL 650524, at *4.

Rather, the Court finds that a rate of $250 per hour for time spent at the depositions is reasonable. *See Magee*, 172 F.R.D. at 646 (collecting cases analyzing the reasonable rate for expert psychiatric fees). Therefore, Plaintiff's expert witnesses are entitled to a total of $2,750 for the eleven hours they spent testifying at their depositions.

This is not the end of the Court's inquiry, however, as

14

Defendant challenges both the rate charged by the experts, and Plaintiff's attempt to recoup fees for the time the experts spent preparing for their depositions. On behalf of the expert witnesses, Plaintiff seeks to recover $295 per hour for the 17 hours these experts spent preparing for their depositions and meeting with Plaintiff's counsel.

As a general rule, courts in this Circuit have ruled that the time experts spend preparing for depositions is not compensable under Rule 26.[10] *M.T. McBrian, Inc. v. Liebert Corp.*, 173 F.R.D. 491, 493 (N.D. Ill. 1997). Courts have made exceptions to the rule upon the petitioner's showing that the case is complex and there has been a "considerable lapse of time between an expert's work on the case and the date of his actual deposition." *Id.; see also McClain*, 1996 WL 650524, at *3 (refusing to allow petitioner to recover costs for an expert's deposition preparation, even though the case was complex, because the petitioner failed to sufficiently detail the expert's preparation time.) Because Plaintiff has made no such showing in this case, its request for expert fees relating to deposition preparation is denied.

The Court must also determine who is responsible for collecting these costs from Defendant. Plaintiff requests that this Court hold Defendant's attorneys jointly and severally liable

---

[10] The Court acknowledges that such costs may be recoverable in other jurisdictions. *See Magee*, 172 F.R.D. at 646-647 (collecting cases).

for the experts' permitted fees. Although such a move would be fairly unusual, it is not without precedent. In *Jenkins v. General Motors Corp.*, 164 F.R.D. 318, 320 (N.D.N.Y. 1996), the court correctly noted that Rule 26(b)(4)(C) "does not address the issue of whether the party's attorney may be compelled to pay and then seek reimbursement from the party, or if the opponent must seek payment directly from the party him or herself."

The *Jenkins* court ruled that a party's attorneys could be held liable for reimbursing a petitioner for expert witness fees. In reaching its conclusion, the court found that the party's attorneys had previously advanced fees on the party's behalf. *Id.* at 320. In addition, the court was persuaded by the petitioner's policy arguments that: 1) the party's attorney, as opposed to the petitioner, was in a better position to assess his client's willingness and ability to pay; 2) it was the party's attorney who decided to depose the petitioner's experts; and 3) permitting one party to obtain discovery at the other party's expense would emasculate the purpose of Rule 26(b)(4)(C). *Id.*

Although the instant case is distinguishable from *Jenkins* in certain respects, the Court is persuaded that, under the facts of this case, defense counsel should bear the risk of collecting the permitted expert witness fees from Defendant. Initially, the Court notes that defense counsel has repeatedly recognized Defendant's obligation to pay reasonable expert witness fees. (01-05-00 Tr. at

16

21.) In addition, co-counsel informed the Court that defense counsel were willing to "foot the bill" for the sanctions awarded against Defendant. (01-05-00 Tr. at 23).

Moreover, defense counsel have been acutely aware of Defendant's failure to remit Court-awarded sanctions to Plaintiff in the past. In addition, defense counsel proceeded with the expert depositions--and, arguably, deposed the witnesses for an unnecessarily lengthy period of time--despite its repeated claim that Defendant was virtually destitute.

Importantly, despite defense counsel's claims regarding Defendant's financial wherewithal, defense counsel and Defendant concede that Defendant served as a medical consultant for defense counsel on other litigation matters during 1999. Defendant allegedly rendered these services to defense counsel without compensation, even though Defendant allegedly could not pay his utility bills. Given the symbiotic relationship between defense counsel and Defendant, the Court finds that defense counsel is in a unique position with respect to their ability to achieve restitution from Defendant.

Therefore, the Court finds that, even though Defendant is ultimately liable for the expert witness fees, Plaintiff may collect those fees from defense counsel. Defense counsel are then free to pursue reimbursement from Defendant. Defense counsel is ordered to pay the outstanding, permitted expert witness fees in

the amount of $2,750 within seven days of the issuance of this Order.

## II. Motion For Additional Sanctions

In its Motion for Additional Sanctions, Plaintiff challenges Defendant's repeated failure to submit adequate documentation with regard to the *D'Acquisto* matter, and Defendant's failure to pay the sanction award. The Court will address each component of Plaintiff's Motion in turn.

### A. The *D'Acquisto* Documentation

Plaintiff has been requesting documentation regarding Defendant's participation in the *D'Acquisto* proceedings since mid-1999. Despite the Court's repeated orders, Defendant waited months before responding to Plaintiff's request in any manner whatsoever. In response to the Court's January 12, 2000 Order, Defendant submitted a calendar noting (apparently) the dates on which he attended proceedings or otherwise provided assistance in the *D'Acquisto* matter.

The Court agrees with Plaintiff that these notations fail to reveal the extent of Defendant's participation in the *D'Acquisto* matter, or that they fully comport with Defendant's deposition testimony. Moreover, the Court recognizes that this information bears significantly on the underlying issues in this case. At the heart of this case is Defendant's ability to be in a public setting and his cognitive functioning. Plaintiff correctly argues that

Defendant's attendance at the *D'Acquisto* proceedings and his subsequent consultation bear directly on those issues.

As such, the Court finds that Defendant's calendar entries, combined with his affidavit, fail to sufficiently comply with the Court's repeated orders regarding the *D'Acquisto* documentation. Nevertheless, the Court is satisfied that the submitted calendar entries, combined with Defendant's deposition testimony, establish that Defendant repeatedly attended the very public *D'Acquisto* proceedings and provided medical consultation to defense counsel.

Federal Rule of Civil Procedure 37(b)(2) confers broad discretion upon the Court when sanctioning parties for discovery abuses. *See, Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1156 (7th Cir. 1989); *Quela v. Payco-General American Credits*, No. 99 C 1904, 2000 WL 656681, at *6 (N.D. Ill. Mar. 26, 2000). Moreover, Defendant's behavior with respect to the *D'Acquisto* documentation clearly demonstrates the wilfulness and bad faith required before sanctions may be imposed under Rule 37. *Philips Med. Systems Int'l v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992) (Rule 37 sanctions are "available to penalize balky litigants and to deter others who might otherwise ignore discovery orders.") Therefore, the Court finds that the fact that Defendant repeatedly attended the *D'Acquisto* proceedings in public and that he provided medical consultation to defense counsel should be taken as established, and recommends that Defendant be prohibited from denying these facts.

Fed. R. Civ. P. 37(b)(2)(A).

In addition, the Court recommends that Defendant and defense counsel be ordered to pay Plaintiff's attorneys' fees in connection with filing the March 20, 2000 Motion for Additional Sanctions. Fed. R. Civ. P. 37(b)(2) ("[T]he court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure.")

## B. The Payment of Sanctions

This issue highlights perhaps the most troubling aspect of defense counsel's conduct, demonstrating defense counsel's utter lack of respect for the Court and the judicial process. After months of failing to comply with the Court's orders regarding the payment of sanctions, on April 5, 2000, Defendant tendered to co-counsel--not to Plaintiff--the entire sanctions award. Despite this Court's repeated orders and warnings directing Defendant to submit these sums to Plaintiff immediately, defense counsel failed to turn the $1,840.08 over to Plaintiff.

In an attempt to explain this egregious breach of the Court's orders, lead counsel argued at the September 6, 2000 status hearing[11] that co-counsel had filed a motion to reconsider, seeking direction from the Court with regard to the sums entrusted to them.

---

[11] Not surprisingly, defense counsel was late for the scheduled status hearing.

20

(09-06-00 Tr. at 5-7). In fact, defense counsel never filed a motion to reconsider the sanctions award. Rather, in its prayer for relief as part of its April 5, 2000 Response to Plaintiff's Motion for Additional Sanctions, Defendant requested that the Court reconsider and vacate the sanctions order, reduce the sanctions award, hold payment of the award in abeyance until judgment, or grant Defendant three additional days to borrow the $1,840.08 to satisfy the sanctions award.[12]

Significantly, the Court has never vacated or stayed its prior orders requiring Defendant to immediately remit the sanctions award. The Court recommends that defense counsel be ordered to immediately forward to Plaintiff the $1,840.08 it received from Defendant on April 5, 2000, or be held in contempt of Court. In viewing defense counsel's conduct throughout these proceedings, however, the Court notes that additional sanctions might be warranted.

Attorneys who vexatiously multiply proceedings are personally subject to sanction. 28 U.S.C. § 1927 (West 2000); *In re Maurice*, 69 F.3d 830, 833 (7th Cir. 1995). Section 1927 provides, in relevant part:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (West 2000).

---

[12] This last request directly contradicts co-counsel's affidavit that, as of April 5, 2000, he was already in possession of the $1,840.08 from Defendant.

See also, *First Nat'l Bank of Lincolnshire v. Cloud*, 107 B.R. 156, 161 (N.D. Ill. 1989)(a court may impose sanctions against an attorney under 28 U.S.C. § 1927 "when the attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice.")

In reviewing the facts leading up to the imposition of sanctions awarded in this case, the Court's numerous orders and warnings regarding the payment of these sanctions, and then defense counsel's unilateral decision to ignore these orders and retain the sanction award, the Court concludes that defense counsel: 1) caused a multiplication of proceedings, 2) engaged in unreasonable and vexatious conduct, 3) which resulted in an increase in the cost of the proceedings. *See Overnite Trans. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983); *Baker Indus. v. Cerberus Ltd.*, 764 F.2d 204, 214 (3d Cir. 1985).

As an overview, the Court notes that Defendant and defense counsel's improper and unprofessional behavior at least partially necessitated that Plaintiff depose Defendant on six separate occasions, and required repeated rulings from the Court on trivial matters. This conduct led to the initial order imposing sanctions. In addition, defense counsel frequently missed scheduled status hearings and often arrived late to Court. This often resulted in duplicative court hearings, the filing of unmeritorious motions to vacate and reconsider, and extended the time that Plaintiff's

counsel was required to be in court.

Finally, Defendant and defense counsel repeatedly treated the Court's orders as insignificant and optional. Defense counsel's most recent antics in failing to tender the sanctions award to Plaintiff eliminates any doubt in the Court's mind that defense counsel's behavior is and has been intentional, in bad faith, and for purposes of delaying these proceedings. Therefore, the Court is of the opinion that defense counsel could be sanctioned under §1927, although it takes no position as to whether such action should be taken here.

Although the Court warned defense counsel that it would recommend fining Defendant an additional $100 per day until the sanctions were paid, the Court will leave the appropriate sanction amount up to the District Court. The Court notes, however, that Plaintiff has already been awarded its costs, expenses, and attorneys' fees reasonably incurred in relation to deposing Defendant in August of 1999.[13]

### Conclusion

For the reasons stated above, the Court recommends that Plaintiff's Motion to Compel and for Sanctions be granted in part

---

[13] The Court further notes that § 1927 provides an additional basis for requiring defense counsel to pay Plaintiff's costs, expenses, and attorneys' fees in filing its Motion for Additional Sanctions.

and denied in part, and that Plaintiff's Motion for Additional Sanctions be granted in part and denied in part.


Dated: September 22, 2000          Respectfully Submitted:


_____
ARLANDER KEYS
United States Magistrate Judge


Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Ronald K. Guzman. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).