# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6135 | **DATE** | 3/19/2001 |
| **CASE TITLE** | ROYAL MACCABEES LIFE INS. CO. vs. LEON MALACHINSKI, D.O. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court affirms the 9/22/00 Report and Recommendation and further orders that defense counsel be sanctioned under 28 U.S.C. Section 1927. The Court declines to adopt the 11/21/00 Report and Recommendation and, thus, denies the Plaintiff's Motion to Strike Defendant/Counter-Plaintiff's Motion for Summary Judgment.

(11) ■ [For further detail see order on the reverse side of the original minute order.] order attached to the original minute

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | 3 |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 2 0 2001 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | MAR 2 0 2001 date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

**Document Number** 169

# ORDER

The Court affirms all recommendations in Magistrate Judge Arlander Keys' September 22, 2000 Report and Recommendation and thus hereby grants in part and denies in part the Motoin to Compel and Motion for Sanctions [99-1, 99-2] and grants in part and denies in part the Motion for Additional Sanctions [114-1]. The Court declines to adopt the Magistrate Judge Keys' November 21, 1999 Report and Recommendation and thus denies plaintiff's motion to strike defendant's motion for summary judgment [146-1]. Accordingly, the defendant's motoin to rescind order to pay sanctions is denied [158-1].

With regard to the Motion for Additional Sanctions, specifically for the failure to produce the D'Acquisto records, the Court sanctions defendant by factually holding that the "defendant repeatdly attended the D'Acquisto proceedings in public and that he provided medical consultation to defense counsel.

The Court directs defense counsel to tender to plaintiff $1,840.08 for defendant's misconduct during this deposition under the Motion for Additional Sanctions. With regard to the Motion to Compel and Motion for Sanctions, the defendant is directed to pay $2,750 for expert fees directly to plaintiff. Defense counsel is jointly and severally liable for payment of these fees. The Court also orders defense counsel to pay a sanction of $300 to the Clerk of the Court pursuant to 28 U.S.C. Section 1927. All payments of these sanctions and expert fees must be paid to the plaintiff and the Clerk of the Court within seven days of the date of issuance of this opinion.

In accordance with this opinion, defendant and defense counsel are ordered to pay attorneys' fees and costs to plaintiff for preparation of plaintiff's Motion for Additional Sanctions. Additionally, the Court sanctions defense counsel under 28 U.S.C. Section 1927 and directs that defense counsel be liable for two missed court appearances regarding these matters on September 3, 1999 and November 15, 1999 by paying plaintiff's attorneys' fees. The Court directs plaintiff to submit a fee petition to this Court regarding Plaintiff's fees and costs for their Motion for Additional Sanctions and plaintiff's fees for the two missed court appearances. In accordance with local rules, the Court directs plaintiff and defendant to confer and meet in good faith to agree on fees that should be awarded prior to plaintiff's filing of the fee motion.

If the defendant and defense counsel fails to comply with any of the orders in this opinion, the Court reserves the right to impose further sanctions.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROYAL MACCABEES LIFE INSURANCE COMP ANY, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | No. 96 C 6135 |
| v. | ) ) | Judge Ronald A. Guzman |
| LEON MALACHINSKI, D.O., | ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

DOCKETED

MAR 0 2001

## MEMORANDUM OPINION AND ORDER

This matter is before the Court after the issuance of two separate Report and Recommendations by Magistrate Judge Arlander Keys on September 22, 2000 and November 21, 2000. The September 22, 2000 Report and Recommendation addressed Plaintiff's Motion to Compel, Motion for Sanctions, and Motion for Additional Sanctions, and the November 21, 2000 Report and Recommendation addressed Plaintiff's Motion to Strike Defendant/Counter-Plaintiff's Motion for Summary Judgment.

Regarding the September 22, 2000 Report and Recommendation, Magistrate Judge Keys recommended that the Motion to Compel and Motion for Sanctions be granted in part and denied in part and that the Motion for Additional Sanctions be granted in part and denied in part. Regarding the November 21, 2000 Report and Recommendation, Magistrate Judge Keys recommended that the Motion to Strike be granted in part and be denied in part.

The Court affirms the September 22, 2000 Report and Recommendation and further orders that defense counsel be sanctioned under 28 U.S.C. § 1927. The Court declines to adopt

1

the November 21, 2000 Report and Recommendation and, thus, denies the Plaintiff's Motion to Strike Defendant/Counter-Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

The following is an overview of the relevant facts regarding the motions at issue in the September 22, 2000 and November 21, 2000 Report and Recommendations.[1]

Plaintiff first deposed defendant on February 9, 1999. Subsequently, plaintiff attempted to depose the defendant on four other occasions, but each session was abruptly ended for various reasons.[2]

On August 9, 1999, plaintiff filed a Motion for an Order Compelling Discovery and Imposing Sanctions. Plaintiff detailed the difficulty plaintiff was having in deposing defendant due to defendant's repeated refusal to answer questions and the assistance and prompting by defendant's counsel. (Pl.'s Mot. Compel Disc. at 2-4.) The motion also alleged that the defendant repeatedly failed to bring requested documents to his depositions, including certain documents regarding the *D'Acquisto* proceedings, *i.e.*, all records the defendant kept with regard to defendant's medical consultation work for defense counsel in *D'Acquisto v. Lutheran General Hosp.*, Case. No. 92 L 3820. (*Id.* at 5.) Plaintiff requested an order directing attorneys' fees and costs for the August 3, 1999 deposition, compelling defendant to appear for another deposition,

---

[1]For a fuller recitation of the facts and events regarding these matters in the case, see Magistrate Judge Arlander Keys' Report and Recommendation dated September 22, 2000.

[2]The defendant was deposed on February 9 and 25, 1999, April 5 and 25, 1999, and August 3, 1999. (Def.'s Mem. Supp. Obj. at 2.)

and directing production of documents.  (*Id.* at 11.)

On August 11, 1999, the Magistrate Judge heard arguments by both parties on plaintiff's motion regarding the numerous depositions of defendant.  After a review of the fifth deposition transcript of the defendant and argument, Judge Keys concluded that the deposition was "worthless" due to the number of interruptions during the session by defense counsel.  (8/11/99 Minute Order; 08/11/99 Tr. at 4, 5, 6, 7, 9.)  The Magistrate Judge partially granted plaintiff's motion and directed defendant to pay plaintiff the costs of the fifth deposition.  (8/11/99 Minute Order; 8/11/99 Tr. at 18, 24.)  Defendant was also ordered to produce the documents plaintiff requested during the depositions, which included "all records kept in connection with the medical consultation in the *D'Acquisto* case," at the defendant's scheduled redeposition on August 26, 1999.  (8/11/99 Tr. at 19.)  Judge Keys reserved judgment on whether to grant attorneys' fees to plaintiff until after the completion of the defendant's deposition.  (8/11/99 Minute Order; 08/11/99 Tr. at 25.)  On August 26, 1999, plaintiff deposed the defendant.  (9/3/99 Tr. at 2.)

On September 3, 1999, defense counsel failed to appear at a scheduled hearing in front of the Magistrate Judge.  (9/3/99 Tr. at 3-4.)  Judge Keys, once again, ordered defendant to pay the costs of the August 3, 1999 deposition of defendant to plaintiff and gave defendant until September 17, 1999 to pay the award.  (9/3/99 Minute Order; 9/3/99 Tr. at 7.)  The Magistrate Judge further reserved judgment on whether to grant plaintiff attorneys' fees for the August 3, 1999 deposition, until both counsel were present, and scheduled a hearing on September 27, 1999.  (9/3/99 Minute Order; 9/3/99 Tr. at 7.)

On September 27, 1999, both parties appeared before the Magistrate Judge.  Defendant requested to depose plaintiff's expert witnesses, Drs. St. Pierre and Wasyliw, and Judge Keys

granted his motion. (9/27/99 Minute Order; 9/3/99 Tr. at 4-5.) The Magistrate Judge requested

an explanation from the defense counsel as to why the defendant had not complied with the order

regarding sanctions for defendant's deposition. (9/27/99 Tr. at 9.) Defense counsel responded

that defendant "ha[d] no money," and the Magistrate Judge asked why the defendant had not

responded by "showing the court he was unable to pay it." (9/27/99 Tr. at 10, 11.) Defense

counsel asserted that they "intended" to respond. (9/27/99 Tr. at 11.) The Magistrate Judge

issued a new deadline of October 27, 1999, for the defendant to pay the costs of the August 3,

1999 deposition. (9/27/99 Tr. at 12.) Judge Keys further awarded plaintiff fees and costs of the

deposition on August 26, 1999. (9/27/99 Tr. at 12-13.) In total, the Magistrate Judge ordered

defendant to pay $500.00[3] to plaintiff by October 27, 1999, which included the costs of the fifth

deposition on August 3, 1999 and fees and costs for the sixth deposition on August 26, 1999.

(9/27/99 Minute Order; 09/27/99 Tr. at 14, 15.)

On November 11, 1999, plaintiff filed a Motion to Issue a Rule to Show Cause Against

Leon Malachinski for failure to pay sanctions. On November 15, 1999, defense counsel failed to

appear at a scheduled hearing in front of the Magistrate Judge. According to the plaintiff,

defense counsel was notified of the motion on November 10, 1999. Judge Keys noted that

defense counsel called just prior to the scheduled hearing to inform the Court of the inability to

appear. (11/15/99 Minute Order; 11/15/99 Tr. at 3-4.) During the hearing, both the Magistrate

Judge and plaintiff noted that defendant had informed them that he had filed a Motion to

Reconsider Sanctions, although neither the Court nor the plaintiff had received the motion.

---

[3]The Magistrate Judge did not base this amount on specific fees but estimated the amount, and plaintiff agreed it was a fair amount.

4

Judge Keys denied plaintiff's Motion to Issue a Rule to Show Cause against defendant, but awarded plaintiff a total of $1,840.08 for fees and costs in connection with defendant's deposition on August 3, 1999. (11/15/99 Minute Order; 11/15/99 Tr. at 8.) The Magistrate Judge suggested that payment of the $1,840.08 could be left until final judgment but then decided to delay decision until all counsel were present. (11/15/99 Tr. at 8, 11.)

On November 18, 1999, defendant and plaintiff's counsel appeared before the Magistrate Judge for a hearing. Defense counsel asserted that it never received notification of the November 15, 1999 hearing. Judge Keys ordered the defendant pay $1,840.08 by November 30, 1999, or the Magistrate Judge would recommend to the district court that sanctions be imposed at $100 a day until payment was made to plaintiff. (11/18/99 Minute Order; 11/18/99 Tr. at 50.)

On November 29, 1999, defendant filed a Motion to Reconsider Sanctions, which was denied by Judge Keys on December 1, 1999. (12/1/99 Minute Order.)

Meanwhile, on November 18 and 30, 1999, defense counsel deposed plaintiff's expert witnesses, Drs. St. Pierre and Wasyliw for approximately eleven hours. (Pl.'s Mot. Compel & Sanctions at 1-2.) Plaintiff submitted the bill for the experts' services to defense counsel on December 21, 1999 for payment. (1/5/00 Tr. at 20-21.)

At a hearing on January 5, 2000, plaintiff informed Judge Keys that defense counsel represented to plaintiff that by end of the day on January 5, 2000, defendant would inform plaintiff whether the defendant would pay the expert fees. (1/5/00 Tr. at 20.) Even though there was a possibility that defendant would not pay the expert fees, defense counsel recognized defendant's obligation to pay for the depositions in open court. (1/5/00 Tr. at 21.) Additionally, at this hearing, defense counsel offered to pay defendant's sanctions: "We're willing to actually

5

foot the bill." (1/5/00 Tr. at 23.) Defense counsel now argue that they wanted to pay the $500, however, not the $1,840.08, nor a daily sanction of $100 for failing to meet the deadline, as ordered on November 18, 1999. Judge Keys informed defense counsel that if the plaintiff received payment for the full $1,840.08 that day, then he would rescind the $100 per day sanction. (1/5/00 Tr. at 24-25.) Defendant failed to contact plaintiff regarding payment of the expert fees and failed to make a payment toward the sanctions regarding the August 3, 1999 deposition.

On January 10, 2000, plaintiff filed a Motion to Issue a Rule to Show Cause against Leon Malachinski for failure to produce, among other documents, the records kept in connection with his medical consultation in the *D'Acquisto* matter. Among the relief that plaintiff requested was that the Magistrate Judge enter an order (1) establishing that the defendant was present during the entire course of the *D'Acquisto* hearing and acted as medical consultant for defense counsel; and (2) awarding attorneys' fees for preparation of the motion.

On January 10, 2000, plaintiff also filed a Motion to Compel and Motion for Sanctions regarding the payment of expert witness fees. Plaintiff requested that the Court order defendant to pay expert fees of $600 an hour for eleven hours of deposition time, grant attorneys' fees for preparation of the motion, and strike defendant's answer and counterclaim. (Pl.'s Mot. Compel & Sanctions at 4.)

Defendant replied to plaintiff's Motion to Compel on January 12, 2000. Defense counsel argued that the expert rate of $600 was excessive, contrary to the experts' own testimony as to their fees, and unconscionable. (Def.'s Mot. Adjudicate Pl.'s Expert Fees at 2-4.)

On January 12, 2000, Judge Keys denied Plaintiff's Motion to Issue a Rule to Show

6

Cause without prejudice. However, the Magistrate Judge ordered that the defendant produce requested documents, including his records with respect to the *D'Acquisto* matter or file an affidavit stating that he destroyed the records and the date of such destruction. (1/12/00 Minute Order; 1/12/00 Tr. at 9-10.)

In response to Judge Keys' orders, defendant merely submitted to plaintiff calendar markings from 1999 indicating when he was present in court for the *D'Acquisto* hearing to the plaintiff. On March 20, 2000, plaintiff filed a Motion for Additional Sanctions regarding defendant's failure to pay the $1,840.08 award and his inadequate production of documents regarding the *D'Acquisto* case.

On April 5, 2000, in Defendant's Response to Plaintiff's Request for Additional Sanctions, defendant requested that the Court reconsider the sanctions regarding defendant's deposition. Defendant insisted that defendant's submission was in complete compliance with the request for *D'Acquisto* documents. Defendant also informed the Court that the $1,840.08 was being held in escrow by defense counsel. Defendant requested that the Court rescind the order of $1,840.08. If the Court did not reconsider the sanctions, defendant requested that the Court give him three days notice to borrow the money in order to pay the plaintiff, even though the affidavit asserted the money was already in defense counsel's possession. (Def.'s Resp. Pl.'s Req. Add. Sanctions at 5.)

On July 13, 2000, defendant filed a Motion for Summary Judgment.[4] On September 1, 2000, plaintiff filed a Motion to Call a Motion to the Attention of the Court. Plaintiff requested a

---

[4]The Court will rule on the defendant's Motion for Summary Judgment in a separate opinion.

ruling by the Court regarding defendant's failure to pay the expert fees of Drs. Wasyliw and St. Pierre due to the impending start date of a trial of a different case involving the participation and cooperation of both experts. On the same day, plaintiff also filed a Motion to Strike Defendant/Counter-Plaintiff's Motion for Summary Judgment. Plaintiff argued that due to defendant's willful failure to comply with the Court's numerous orders directing payment of sanctions of $1,840.08 and the additional sanctions, defendant was not entitled to prosecute or defend an action to which he is a party. Plaintiff requested that the Court issue an order striking defendant's Motion for Summary Judgment or alternatively "holding" the motion until defendant had satisfied payment of the sanction. (Pl.'s Mot. Strike at 2-3.)

On September 18, 2000, defendant replied to plaintiff's Motion to Strike. Defendant denied that he had failed to comply with the Court's orders directing sanctions because he requested reconsideration of the sanctions on April 5, 2000. (Def.'s Resp. Pl.'s Mot. Strike at 1.) Furthermore, defendant represented that he remitted the said sanction, after alleging borrowing money, to defense counsel, pending the response from the Court regarding reconsideration of the sanction or the timing of payment which would create hardship on the defendant. (Id. at 2.) Defendant also asserted that payment of sanction was withheld because of his inability to pay, and, in fact, defendant was not refusing to pay the sanction. In accordance with his April 5, 2000 Motion to Reconsider Sanction, defendant asserted that he is still awaiting the Court's decision on the motion and is not deserving of a sanction. (Id. at 3.)

On September 22, 2000, Magistrate Judge Arlander Keys issued a Report and Recommendation regarding plaintiff's January 10, 2000 Motion to Compel and Motion for Sanctions, and Plaintiff's March 20, 2000 Motion for Additional Sanctions. The Magistrate

8

Judge recommended that the Motion to Compel and Sanctions be granted in part and denied in part. He recommended the defendant be directed to pay plaintiff's expert fees at $250 an hour for the eleven-hour deposition, for a total of $2,750 in compliance with Rule 26(b)(4)(C). (Magistrate Judge Keys' September 22, 2000 Report & Recommendation at 14 (hereinafter "9/22/00 R&R").) Furthermore, Judge Keys recommended that defense counsel be held jointly and severally liable for payment of expert fees. (*Id.* at 16.) The Magistrate Judge denied plaintiff's request for an award of the experts' preparation time for the deposition. (*Id.* at 15.) With regard to the Motion for Additional Sanctions, Judge Keys proposed that defendant be sanctioned for his failure to produce the *D'Acquisto* documents and for his failure to pay the sanctions awarded to plaintiff for defendant's deposition on August 3, 1999. For the failure to produce documents, the Magistrate Judge directed that defendant pay attorneys' fees to plaintiff for preparation of the Motion for Additional Sanctions. (*Id.* at 20.) Furthermore, the report recommended the establishment of a finding of fact that the defendant repeatedly attended the *D'Acquisto* proceedings in public and that he provided medical consultation to defense counsel. (*Id.* at 19-20.) With regard to defendant's failure to pay the sanctions for defendant's deposition, the report asserts that defense counsel should be directed to forward the $1,840.08 to the plaintiff or risk contempt of court, and any other appropriate sanction determined by the Court.[5]  (*Id.* at 21.)

On September 22, 2000, defendant filed a Motion to Rescind the Order to Pay Sanctions, although the motion was never noticed up by defense counsel. (Magistrate Judge Keys'

---

[5]The Magistrate Judge also suggested that sanctions under 28 U.S.C. § 1927 may be an option, but offered no opinion on whether such action should be taken in this case. (*Id.* at 20-23.)

November 21, 2000 Report and Recommendation at 2 n.2 (hereinafter "11/21/00 R&R").)

Defendant argued that the Court should vacate its orders of sanctions. In this motion, defendant also asserted that earlier the same day, defendant attempted to pay sanctions to the $1,840.08 via a money order to plaintiff's counsel paralegal, but the paralegal allegedly refused to sign a receipt acknowledging payment. Consequently, defendant did not pay the sanction allegedly because there would be no proof of tender of payment.

On October 13, 2000, defendant timely filed Objections to the Magistrate Judge's September 22, 2000 Report and Recommendation. On November 3, 2000, plaintiff timely filed a Response to Defendant's Objections to the Report and Recommendation, dated September 22, 2000.

On November 21, 2000, Magistrate Judge Keys issued his Report and Recommendation regarding plaintiff's September 1, 2000 Motion to Strike Defendant/Counter-Plaintiff's Motion for Summary Judgment. The Magistrate Judge argued that defendant's repeated failure to comply with the Court's orders and continuing delay of the discovery process could rise to the level of conduct necessitating dismissal of defendant's summary judgment motion. Judge Keys, however, instead proposed to stay defendant's Motion for Summary Judgment and all other requests by defendant for affirmative relief until defendant has complied with all orders of the Court. (11/21/00 R&R at 8.)

On November 29, 2000, defendant timely filed his Objections to Judge Keys' November 21, 2000 Report and Recommendation.


## II.  STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 72, the standard of review employed by a district court when reviewing matters determined by a magistrate judge differs based on whether the matter is dispositive or nondispositive. *See* Fed. R . Civ. P. 72. Nondispositive matters are reviewed under the clearly erroneous standard, while dispositive matters are reviewed under the *de novo* standard. Fed. R. Civ. P. 72(a), (b). Under a clearly erroneous standard, a magistrate judge's ruling can only be overturned "if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). Under a *de novo* standard, the district court must give "fresh consideration to those issues to which specific objections have been made." *Rajaratnam v. Moyer*, 47 F.3d 922, 925 n.8 (7th Cir. 1995) (citations omitted). The district court judge looks at all evidence contained in the record and retains final authority over the determination of the dispositive motion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986).

Congress has authorized magistrate judges with the power to make independent decisions on: 1) misdemeanor prosecutions under 28 U.S.C. § 636(a); 2) "any pretrial matter" under 636(b)(1)(A), with eight listed exceptions;[6] and 3) civil proceedings in which the parties consent to a final decision by the magistrate judge under 636(c)(1). *See Alpern v. Lieb*, 38 F.3d 933, 935

---

[6]Section 636(b)(1) provides in relevant part: Notwithstanding any provision of law to the contrary--

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, *except* a motion for injunctive relief, for judgement on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief is granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law. (emphasis added).

(7th Cir. 1994). A magistrate judge may be granted referral power, with no independent effect, and "not inconsistent with the Constitution and Laws of the United States." 28 U.S.C. § 636(b)(3). A magistrate judge is only authorized to make decisions on nondispositive matters that have independent effect in order to assure that he or she does not dispose of the merits of any civil case without the parties' consent. *See Alpern*, 38 F.3d at 935 (finding Rule 11 sanction for money damages dispositive of merits); *see also Bennett v. General Caster Serv. of N. Gordon Co., Inc.*, 976 F.2d 995, 997 (6th Cir. 1992) (same); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462-63 (10th Cir. 1988) (striking plaintiff's pleadings that would result in imminent dismissal of claim is dispositive and so exceeds magistrate judge's statutory authority). Thus, a non-exhaustive list of dispositive motions are excepted from a magistrate judge's pretrial matter authority under 636(b)(1)(A), and reviewed under the *de novo* standard. 28 U.S.C. § 636(b)(1)(b); Fed. R. Civ. P. 72(b).

The Report and Recommendations propose sanctions of monetary fines for failure to comply with the Court's orders, joint and several liability on defense attorneys for defendant's failure to pay expert witness fees, the establishment of a factual finding contrary to a defense claim, and the staying of summary judgment and all other proceedings until defendant has complied with all of the Court's orders. Although all matters before the Court are "pre-trial" matters, the specific sanctions for each motion may have "dispositive" effect or "dispose of the merits" of a defense or claim requiring a more stringent review of the Magistrate Judge's recommendation. Therefore, the Court will address the appropriate standard of review when the Court addresses each specific motion.

## III. SEPTEMBER 22, 2000 REPORT AND RECOMMENDATION

### A. MOTION FOR ADDITIONAL SANCTIONS

### 1. D'Acquisto Documents

#### a. Standard of Review

The Magistrate Judge recommends sanctioning the defendant and defense counsel for repeated violation of his orders to produce certain documents regarding the defendant's participation in the *D'Acquisto* proceeds. Judge Keys recommends sanctioning defendant by awarding plaintiff attorneys' fees and costs in preparing the Motion for Additional Sanctions. The report also recommends sanctioning defendant by making a factual finding that the "defendant repeatedly attended the *D'Acquisto* proceedings in public and that he provided medical consultation to defense counsel." (9/22/00 R&R at 19-20.) The establishment of the factual finding is contrary to the defendant's case, and could deny a defense or claim at trial.[7] Such a sanction is "dispositive of a claim or defense of a party," and requires *de novo* review under Rule 72. *See* Fed. R. Civ. P. 72 (a), (b). Thus, it is the Court's judgment that such recommendations are subject to the *de novo* standard of review under Rule 72(b).

#### b. Analysis

According to the Federal Rule of Civil Procedure 37(b)(2), a court "shall require the

---

[7]As evident from the report and recommendation, a major issue of contention is defendant's mental state and his ability to continue to work in his profession. Therefore, the conclusion that defendant was present at the *D'Acquisto* hearings and gave professional advice to defense counsel is probative of, and tends to contradict defendant's claim of mental instability and continued inability to work in his profession.

party failing to obey [an] order or the attorney advising [him] or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2). Rule 37 recognizes the potential for abuse during the discovery process and prevents litigants from "unjustifiably resisting discovery." Fed. R. Civ. P. 37, advisory committee's note. A court may impose various sanctions on a party or his attorney for failing to comply with a court order. *See* Fed. R. Civ. P. 37; *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 755 (7th Cir. 1994). A court may impose sanctions when a party has received adequate notice that certain proceedings are to occur on a certain date. *See Tamari v. Bache & Co. (Lebanon), S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984). Sanctions are appropriate where the wrongdoer's conduct evidences wilfulness, bad faith, contumacious conduct, or otherwise dilatory conduct. *See Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993).

Defendant received more than adequate notice that he was required to produce documents. Judge Keys issued three separate orders directing defendant to produce his "time sheets" with regards to his attendance at the *D'Acquisto* hearings and any documentation regarding his consultant work for defense counsel in the case.[8] On August 11, 1999, the Magistrate Judge, in open court, directed defendant to produce the documents requested by plaintiff at defendant's next scheduled deposition. (8/11/99 Tr. at 19.) On January 10, 2000,

---

[8]Specially, defendant testified in his August 3, 1999 deposition that during the *D'Acquisto* trial, he maintained "time sheets." (8/3/99 Tr. at 23.) According to defendant, on those "time sheets" he recorded the "number of hours" he spent at trial and a "description of what [he] did." (8/3/99 Tr. at 23-24.) The defendant also stated that he kept these "time sheets" in order to determine "about how much time it was going to be" that he spent on the case and because Mr. Goode, defense counsel, suggested defendant keep "time sheets." (8/3/99 Tr. at 24.)

Judge Keys directed defendant to produce the documents, or submit an affidavit that documents had been destroyed. (1/10/00 Minute Order.) On January 24, 2000, defendant was once again directed to submit the "time sheets" or submit an affidavit to plaintiff regarding whether he had the documents and if not, what happened to them. (1/24/00 Minute Order.)

Defendant submitted to plaintiff an affidavit and copies of his 1999 calendar with general markings on dates where he attended proceedings. Defendant contends these documents represented the entirety of his time records for the *D'Acquisto* case, and there was "never anything further in existence" in response to the three court orders. (Def.'s Resp. Pl.'s Req. Add. Sanctions at 4.) The Magistrate Judge concluded that defendant's production of documents failed to reveal the extent of the defendant's participation in the *D'Acquisto* matter and did not comport with defendant's testimony during his deposition.

In the defendant's objections to the Magistrate Judge's recommendation, defendant asserts that he, in fact, did not violate Judge Keys' order. The defendant asserts that: 1) he produced all the available documentation in reference to the *D'Acquisto* case; 2) there is no evidence that additional records are being willfully withheld by defendant or pursuant to advisement by defense counsel; 3) plaintiff's motion is deficient because it does not include proper certification; and 4) the Magistrate Judge's recommendation is unfairly penalizing the defendant for documents that do not exist.

In determining whether a disobedient party or attorney was substantially justified in disobeying an order, the court has considerable discretion. *See Bankatlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1048 (11th Cir. 1994). It is the disobedient party or counsel's burden to prove that its failure was "substantially justified" or that it would be unjust for some

other reason to impose sanctions. *See* Fed. R. Civ. P. 37(b)(2), advisory committee's note. Defendant offers several justifications for his alleged failure to produce the documents.

Although the defendant may have produced some documents responsive to the order, he may not avoid sanctions merely by producing documents. *See Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, 177 F.R.D. 633, 636 (N.D. Ill. 1998). Judge Keys originally directed the defendant to produce the *D'Acquisto* documents in August 1999. (8/11/99 Tr. at 19.) Defendant did not produce any documents until after the Magistrate Judge issued a second order directing production on January 10, 2000, at least four months after the first directive by Judge Keys. Production cannot absolve the defendant for failing to comply with the Magistrate Judge's orders. *See Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982).

Moreover, the Court affirms Judge Keys' finding that the documents produced do not comport with the "records" that defendant testified he maintained during the *D'Acquisto* trial. Our review of the transcript demonstrates that defendant testified to a more in-depth documentation of his participation at the *D'Acquisto* proceedings than revealed by the documents produced to plaintiff. The Court recognizes the importance of the information, considering the core of the case is defendant's mental capabilities and his ability to be in a public setting. Complete documentation should have been produced to plaintiff in response to the Magistrate Judge's orders, and defendant failed to comply sufficiently with the order.

Contrary to defendant's assertions in his objections, there is support and evidence that additional documents exist and are being withheld by defendant or his counsel. First, defendant waited for four months to produce any documents responsive to the Magistrate Judge's minute order, signifying to the Court a blatant disregard its orders. Secondly, as noted earlier,

16

defendant's own deposition testimony provides the key evidence of the existence of additional documents. Defendant has not tendered any viable explanation for the failure to produce the additional documentation, further violating Judge Keys' order to specify whether and when such additional documents were destroyed. The delay in producing any responsive documents and failure to give a viable explanation of the status of the additional documents forces the Court to conclude that defendant and his counsel are willfully withholding the additional documentation directed by Judge Keys' orders. Contrary to defendant's objections, the Magistrate Judge appropriately recommended penalizing the defendant for failing to produce documents that the defendant testified under oath existed. In concurrence with Judge Keys' finding, the Court finds that defendant's conduct evidences wilfulness, bad faith, contumacious conduct, or otherwise dilatory conduct sufficient for Rule 37 sanctions. *See Crown Life Ins. Co.*, 995 F.2d at 1382.

Defendant also asserts that plaintiff's Motion for Additional Sanctions lacks "proper certification" as a discovery motion. Although defendant neither cites his source for such a requirement nor explains his meaning of "proper certification," the Court assumes that the defendant is referring to a moving party's good faith attempt to confer with the opposing party regarding the discovery dispute before seeking court intervention, as required in a motion under Rule 37(a)(2)(A). However, contrary to defendant's assertions, there is no requirement that a party try to secure the discovery through negotiations before filing a motion for sanctions for Rule 37(b). Clearly, the prior issuance of a court order obviates the need to meet and confer as required under Rule 37(a). *See* Moore's Fed. Pract. § 37.40, at 37-59. Furthermore, any effort to secure defendant's voluntary compliance in the case at bar would clearly be futile.

The court has broad discretionary power in imposing sanctions. *See Patterson v. Coca-*

*Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir. 1988); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam). Nonetheless, a court should exercise restraint in imposing sanctions and apply only the power "adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 280 (1990). Sanctions should be proportionate to conduct and circumstances surrounding the failure to comply with discovery. *See United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994); *Crown Life Ins.*, 995 F.2d at 1382.

As a sanction for the violation of Judge Keys' orders, the report recommends the establishment of a factual finding that the "defendant repeatedly attended the *D'Acquisto* proceedings in public and that he provided medical consultation to defense counsel." Although the sanction may be awarded under Rule 37(b)(2)(a),[9] it constitutes a considerable sanction, particularly in this case which revolves around defendant's mental capabilities and ability to be in a public setting. On the one hand, the scope of the sanction does not prohibit defendant from demonstrating his defense through other evidence, and only precludes further factual dispute regarding the *D'Acquisto* proceedings. Yet, the Court acknowledges that the sanction may significantly restrict defendant's ability to prove that the defendant has mental problems and the extent to which these problems effect his ability to practice his profession.

Defendant, however, should have considered the possibility of such a sanction before it conducted itself in bad faith in response to the Magistrate Judge's orders. Defendant's tactics

---

[9]Federal Rule of Civil Procedure 37(b)(2) reads partly as follows--
the court . . . may make such orders in regard to the failure as are just, and among others:
(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

blocked plaintiff's access to evidence that plaintiff needs to litigate fairly this issue, thus, prejudicing plaintiff's case. Moreover, to allow a party or counsel to avoid sanctions by such contrivance of the Court's authority would defeat the purpose of the rules. In order to encourage the defendant's compliance with the Court's authority and legitimately rectify any prejudice to plaintiff, the Court adopts Judge Keys' recommendation. The Court finds the sanction appropriate and proportionate to the defendant's tactics and continued willful withholding of documents despite the Court's orders.

The Court therefore sanctions defendant by factually holding that "defendant repeatedly attended the *D'Acquisto* proceedings in public and that he provided medical consultation to defense counsel." Additionally, in accordance with the Magistrate Judge's report, the Court directs the defendant and defense counsel to pay attorneys' fees and costs to the plaintiff for preparation of the Motion for Additional Sanctions. It is clear to the Court that the defendant's dilatory conduct caused added expense to plaintiff, and plaintiff should be compensated for defendant's abusive conduct.

## 2. Failure to Pay Sanctions for Defendant's Deposition

### a. Standard of Review

The Magistrate Judge recommends sanctioning defendant for impeding his August 3, 1999 deposition by directing that defendant pay plaintiff attorneys' fees and costs for the deposition. Such a sanction has no dispositive effect on the case, and, therefore, does not require *de novo* review under Rule 72. *See* Fed. R. Civ. P. 72 (a), (b). Thus, the Court will review the Report and Recommendation regarding this matter under the clearly erroneous

standard and will overturn the Magistrate Judge's recommended sanction only if it is contrary to law. *See id.*

**b. Analysis**

Under the 1993 amendment to Rule 30(d)(2), a court may impose sanctions for a party interposing a delay or acting in a way that frustrates the fair examination of a deponent. *See* Fed. R. Civ. P. 30(d)(2)[10]; Moore's Fed. Pract. § 26.06[3], at 26-36, 37. According to the drafters, the amendment clarified the court's authority to sanction attorneys, parties, and non-parties for the use of dilatory and obstructive tactics during depositions. *See* Fed. R. Civ. P. 30(d)(2), advisory committee's note. Accordingly, if a party impedes the opposing party from completing a fair deposition examination of a witness or party, an appropriate sanction would include attorneys' fees and costs for the deposition impaired by the party using dilatory or obstructive tactics.[11] The

---

[10]Federal Rule of Civil Procedure Rule 30(d)(2) provides in pertinent part: "If the court finds such impediment, delay, or other conduct that has frustrated the fair examination of the deponent, it may impose upon the person responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof."

[11] In addition to its authority under Rule 30, a court may also sanction abusive deposition practice under Rule 37. *See* Fed. R. Civ. P. 37. As discussed earlier, a court may impose a sanction if the party fails to comply with a discovery order under Rule 37(b)(2). *See* Fed. R. Civ. P. 37(b)(2). With respect to sanctions, an "order" is interpreted broadly. A formal written order to comply with a discovery request is not required. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994); *see also Murray v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 98 C 1734, 2000 WL 263704, at *3 (N.D. Ill. Feb. 28, 2000). Foremost, however, the court has inherent powers to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The power coexists where procedural rules govern the same conduct. *See id.* at 49. Inherent power must be exercised with restraint and discretion, and, therefore, sanctions are not authorized when in direct conflict with laws or procedural rules. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *Kovilic Constr. Co., Inc. v. Missbrener*, 106 F.3d 768, 777 (7th Cir. 1997). Neither plaintiff's Motion for Additional Sanctions nor Judge Keys' previous orders regarding the sanctions for the defendant's depositions identifies the legal authority for the sanction. The Court, however,

Court concludes that the Magistrate Judge had the authority to issue a sanction for dilatory and obstructive tactics during the defendant's deposition.

The Magistrate Judge issued a total of five orders sanctioning defendant for his conduct during the August 3, 1999 deposition. On August 11, September 3, September 27, November 15, and November 18, 1999, Judge Keys ordered that defendant pay sanctions to plaintiff. (8/11/99, 9/3/99, 9/27/99, 11/15/99, 11/18/99 Minute Orders.) In the report and recommendation, Judge Keys recommends that defense counsel pay the $1,840.08 tendered by defendant to defense counsel, to the plaintiff or be held in contempt of court.[12]

In his objections to the Magistrate Judge's report, the defendant alleges that: 1) Judge Keys' lacked jurisdiction to enter a sanctions order without a prior court order[13]; 2) the

---

presumes that the Magistrate Judge acted pursuant to Rule 30(d), although Rule 37 and inherent powers also provide sufficient authority to sanction the defendant.

[12]The Court notes that the Magistrate Judge's last order on November 18, 1999, directed that defendant pay plaintiff $1,840.08 by November 30, 1999, or face daily sanctions of a $100 dollars a day until the sanction is remitted to plaintiff. (11/18/99 Minute Order.) Notwithstanding this, in the Report and Recommendation, Judge Keys recommended *only* remittance of payment immediately to plaintiff of $1,840.08. Accordingly, the Magistrate Judge's final recommendation in the Report and Recommendation is before this Court today.

[13]As an initial matter, although the propriety of the original sanctioning of defendant for his conduct at his August 3, 1999 deposition is not an issue raised by the plaintiff's Motion for Additional Sanctions, it is subject to review by the Court. According to Rule 72(a), a party has ten days after being served with a copy of the Magistrate Judge's order to object to the order. *See* Fed. R. Civ. P. 72(a). Furthermore, a district court judge to whom a case is assigned is directed to consider such objections and to modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous. The Court notes that although there were four previous orders regarding the sanction regarding defendant's August 3, 1999 deposition (one order also included the August 29, 1999 deposition), each order subsequently altered the previous order with additional or different directives. The final order by the Magistrate Judge regarding the August 3, 1999 deposition was dated November 18, 1999. Defendant orally requested reconsideration of the sanction on November 18, 1999, which was denied by Judge

Magistrate Judge improperly imposed a sanction for the defendant's August 3, 1999 deposition on the defendant with no evidence of willful bad faith conduct by the defendant or his attorney; 3) Judge Keys' improperly imposed sanctions by ignoring uncontroverted evidence of defendant's destitute state and denying the defendant a hearing to further argue his financial poverty; 4) the Magistrate Judge improperly punished defense counsel for representing an indigent client by raising the sanction from $500 to $1,840.08; and 5) plaintiff's Motion for Additional Sanctions was deficient, without the inclusion of a proper certification of good faith.

First, defendant objects to plaintiff's motion because it failed to cite any prior discovery order which the defendant violated before issuance of the sanction. As noted above, a formal order is unnecessary for a court to exercise its powers under Rule 30(d)(2).[14] As clearly evident from the language of the rule, Rule 30(d) does not require a court to issue an order prior to issuance of sanctions. *See* Fed. R. Civ. P. 30(d). "As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 541 (1991). Furthermore, the defendant is also independently obligated under the Federal Rules of Civil Procedure to follow the discovery rules in good faith, and his conduct at his August 3, 1999 deposition violated this obligation. The Court concludes that the defendant's egregious behavior necessitated the appropriate sanction by

---

Keys, and filed a Motion to Reconsider Sanctions on November 29, 1999, which was subsequently denied on December 1, 1999. Defendant has standing to object to the initial imposition of sanctions because he made timely objections to the Magistrate Judge's final order November 18, 1999, imposing sanctions of $1,840.08 on defendant for the August 3, 1999 deposition, and daily sanctions if defendant failed to pay by November 30, 1999.

[14]Alternatively, as discussed earlier, a court does not need a court order to sanction the defendant under Rule 37(b) or its inherent powers.

Judge Keys.

Second, defendant also alleges the initial sanctions were improper because it was plaintiff's misconduct that caused the delays of the deposition of the defendant, not defendant's conduct. According to defendant, plaintiff's refusal to acknowledge defense counsel's presence and their requests for clarification during the deposition as well as plaintiff's personal attacks throughout the discovery proceedings were the abusive tactics that caused the repeated need for deposing the defendant. Defendant contends that his counsel's objections and requests for clarification were not abusive techniques but were proper in order to represent the defendant adequately. Furthermore, defendant declares that not only did plaintiff violate the Professional Code of Conduct for the Northern District of Illinois, but defendant also implies that Judge Keys failed to fulfill his duty to the defendant by not fully reading the August 3, 1999 deposition transcript.

After review of the August 3, 1999 deposition of the defendant and the Magistrate Judge's explanation of previous problems with defendant's four prior depositions, the Court does not find error in Judge Keys' orders sanctioning the defendant and defense counsel for their conduct during defendant's deposition. Many of defense counsel's objections and requests for clarification were unnecessary and clearly exasperated plaintiff's ability to receive responsive answers to the specific questions asked of defendant. As the Magistrate Judge acknowledges, defense counsel never directed the defendant to answer, and clearly counsel's requests for clarification and objections tipped defendant off and assisted defendant's vague and nonresponsive answers. There is no error in Judge Keys' finding that the numerous interruptions by defense counsel went beyond the scope of good faith protection of his client's interest and

delayed a fair examination of the deponent.

Although defense counsel asserts that plaintiff's counsel and the Magistrate Judge have violated their obligations to defense counsel, in fact, it is clear that defense counsel has violated a duty to plaintiff's counsel and Judge Keys by making such unsupported allegations. Indeed we are astonished that defendant would imply that the Magistrate Judge did not thoroughly review the transcript. Judge Keys made it clear to the litigants that he had reviewed the transcript and comments in open court as well as his written report and recommendation make clear that he has spent an inordinate amount of time reviewing the record in this case.

Third, defendant also claims that sanctions are improper because his client is destitute and unable to pay the sanctions. According to defendant, plaintiff failed to present any evidence that adequately countered defendant's affidavit and tax returns establishing his destitute state. Morever, defendant argues that the Magistrate Judge improperly denied defendant a hearing in order to testify to his financial status. The Court fails to find any error in the Magistrate Judge's conclusion that defense counsel has not provided sufficient evidence of the defendant's inability to pay the sanction. Defendant mistakenly asserts that it is plaintiff's burden to prove that the defendant is not destitute, when in fact, it is the defendant's burden to prove otherwise. *See* Fed. R. Civ. P. 37(b)(2), advisory committee's note (noting that, after imposition of an order, it is the disobedient party's or counsel's burden to prove its failure to comply was "substantially justified" or that it would be unjust to impose sanctions). Judge Keys reasonably concluded that the affidavit and income tax returns provided by the defendant did not sufficiently support the defendant's claim of destituteness. The Court finds no error in the Magistrate Judge's refusal to give the defendant a hearing after the occurrence of five different scheduled court appearances

24

where the matter was discussed or could have been discussed if defense counsel had decided to appear in court. Judge Keys gave defendant numerous opportunities to contest the award against him relating to the August 3, 1999 deposition. In fact, the Magistrate Judge informed defense counsel at the September 27, 1999 hearing that defense counsel needed to support its assertions of client's destituteness with evidence.

Fourth, defendant further alleges that the Magistrate Judge punished defense counsel for representing an indigent client when he increased the sanction from $500 to $1,840.08. Judge Keys' sanction does not penalize defendant for his economic status, but only for his conduct in reference to his depositions. Originally, the sanction was only for $500, but due to defendant's own tactics, the Magistrate Judge increased the amount to fully compensate plaintiff for attorneys' fees and costs incurred due to the August 3, 1999 deposition. Judge Keys appropriately increased the sanction from $500 to $1,840.08 after defendant disregarded *three* separate court orders directing payment of the sanctions. Accordingly, the sanction of $1,840.08 was properly imposed by the Magistrate Judge.

Fifth, defense counsel further alleges that plaintiff failed to make a "certification" in its Motion for Additional Sanctions regarding the sanctions for the defendant's deposition. As discussed above, plaintiff is not required to certify a good faith attempt to confer with counsel in its motion because previous orders were entered directing payment. The Magistrate Judge's previous orders make certification unnecessary and obviate the need to meet and confer.

Finding no merit in defendant's objections, the Court affirms Magistrate Judge Keys'

recommendation directing defense counsel[15] to tender to the plaintiff $1,840.08 as a sanction for defendant's conduct at the August 3, 1999 deposition. The Court orders defense counsel to pay the sanction *within seven days* of the date of this opinion.

### 3.   28 U.S.C. § 1927

Under 28 U.S.C. § 1927 ("section 1927"), an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1183 (7th 1992) (quoting 28 U.S.C. § 1927); *see e.g., Ins. Benefits Adm'rs Inc. v. Martin,* 871 F.2d 1354, 1361 (7th Cir. 1989); *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir. 1988). An attorney must have acted with more than mere or ordinary negligence or simple mistake. *See Kotsilieris,* 966 F.2d at 1185. Sanctions are appropriate where "counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims or counsel otherwise showed indifference to statutes, rules, or court orders." *Id.* at 1184-85. Section 1927 applies to instances where there is no violation of the technical rules, but where the proceeding is conducted in bad faith, subjectively or objectively, in order to cause delay or increase costs. *See Burda v. M. Ecker Co.,* 2 F.3d 769, 777 (7th Cir.

---

[15]In defendant's April 5, 2000 affidavit in which defendant responded to plaintiff's Motion for Additional Sanctions, it is unclear whether defendant or defense counsel possesses the $1840.08. In the motion, defendant simultaneously asserted that: (1) he had tendered the $1,840.08 to defense counsel's custody; and (2) that he needed three days to borrow the funds to pay the sanction. However, in a later motion, it becomes apparent that defense counsel has the $1,840.08. In defendant's September 22, 2000 Motion to Rescind Order to Pay Sanctions, defense counsel alleged that defense counsel attempted to pay plaintiff's counsel on defendant's behalf by delivering a money order in said amount but plaintiff's counsel's paralegal refused to sign a receipt of payment. Thus, it appears to the Court that defense counsel is in possession of the $1,840.08.

1993); *Kotsilieris*, 966 F.2d at 1185; *Ins. Benefits Adm'rs*, 871 F.2d at 1391; *see e.g.*, *Sheets v. Yamaha Motors Corp.*, 849 F.2d 179, 186 (5th Cir. 1988); *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir.), *amended by* 803 F.2d 1085 (9th Cir. 1986); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986).

In the September 22, 2000 Report and Recommendation, the Magistrate Judge suggested that defendant and defense counsel could also be sanctioned under 28 U.S.C. § 1927, although Judge Keys took no position as to the appropriate sanction for defendant and defense counsel's failure to comply with orders to pay sanctions for defendant's August 3, 1999 deposition. The Court concludes that the defense counsel's conduct relating to the refusal of the defendant to pay the sanction and insufficient compliance with orders to tender specific documents regarding the *D'Acquisto* case require review under section 1927.

In defendant's objections to the Report and Recommendation, defendant and his defense counsel assert that the Magistrate Judge never informed counsel that Judge Keys believed counsel was acting in such an "egregious" and "vexatious" manner. Although defense counsel admits that on five occasions it failed to appear in court, defense counsel alleges that two of the failed appearances were excusable. The defendant also alleges that the Magistrate Judge fails to identify adequately which motions are baseless and, thus, the defendant is unable to defend itself adequately. Defendant contends that while both plaintiff and defendant sought and received additional time for motions, only defendant's motions are regarded as baseless, while plaintiffs are deemed valid. Finally, defendant asserts that his numerous requests for reconsideration of the sanctions were only "to present the court with every reason to realize that it had erred in its ruling and further that the defendant was unable to pay." Counsel assert that they had a duty to

27

represent their client vigorously and their actions were in conformity with the actions of "competent counsel."

On the contrary, as the Magistrate Judge emphasized, defense counsel's conduct has been less than the actions of "competent counsel." The Court has reviewed the conduct of defense counsel in this case and defense counsel's motions. Although defense counsel characterizes the Magistrate Judge's recommendation as the result of an isolated incident, it is clear that the defense attorneys have repeatedly and needlessly wasted the Court's time. We conclude that defense counsel's repeated absence from court appearances, numerous excuses to the Court for their absences from scheduled hearings, misrepresentations to the Court regarding filed motions and communications with opposing counsel, and disrespect for the Court's authority, all contributed to the Magistrate Judge's suggestion that defense counsel be considered for sanctions under section 1927. Due to defense counsel's conduct, Judge Keys wasted time holding hearings at which only plaintiff's counsel appeared and reviewing defendant's baseless motions regarding the sanctions. As such, the defense counsel's pattern of conduct not only frustrated the ability of the Magistrate Judge to manage this case, it also prevented him from managing other cases on his docket. Contrary to defense counsel's assertion that they were never informed of the Magistrate Judge's frustration, Judge Keys on numerous occasions openly informed defense counsel of their duties to the Court and of their pattern of disregard for the Court's authority. Furthermore, it is not the court's responsibility to remind counsel at every step of the proceedings of their obligations as officers of the court. It is counsel's responsibility to conform his conduct to the Federal Rules Of Civil Procedure and the requirements of 28 USC § 1927 as a matter of course and without the need for special prompting and instruction from the court.

Defendant and defense counsel's disregard of five court orders regarding the same sanctionable conduct during defendant's deposition and two court orders over a six-month period regarding the *D'Acquisto* documents, with continued derogation by failing to produce the rest of the affirmed documentation, is a prime example of an attorney's multiplication of proceedings unreasonably and vexatiously. Therefore, the Court directs that defense counsel be liable for the two missed court appearances regarding these matters on September 3, 1999 and November 15, 1999, and orders counsel to pay plaintiff's attorneys' fees for those days. Additionally, the Court directs defense counsel to pay $300 to the Clerk of the Court *within seven days* in order to reasonably compensate the Court for its expenditures due to their misconduct.

## B.  MOTION TO COMPEL AND MOTION FOR SANCTIONS

### 1.  Standard of Review

Regarding defendant's failure to pay expert fees, the Magistrate Judge recommends that defendant pay expert fees and that both defendant and his defense counsel be jointly and severally liable for the fees. Although the grant of expert fees is a pretrial matter, the sanction of joint and several liability is similar to Rule 11 sanctions, which allows joint and several liability when a "district court concludes that a party or attorney filed a pleading or other document for an improper purpose." *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989); *see* Fed. R. Civ. P. 11. According to Seventh Circuit case law, Rule 11 sanctions, whether pre- or post- dismissal, are dispositive. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996); *Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994). The Seventh Circuit reasoned that a Rule 11 sanction "requires one party to pay money to another;

the denial of a request for sanctions has an effect similar to the denial of a request for damages." *Alpern*, 38 F.3d at 935. The Court of Appeals concluded that "the power to award damages . . . belongs in the hands of the district judge." *Id.* The imposition of joint and several liability is the functional equivalent to Rule 11 sanctions, and thus, the Court views the sanction of joint and several liability for plaintiff expert fees as dispositive. Such a matter demands *de novo* review under Rule 72(b). Fed. R. Civ. P. 72(b).

## 2. Analysis

Under Rule 26(b)(4)(C), "[u]nless manifest injustice would result . . . [courts] shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(C). It is clear from the plain meaning of the Rule 26 that compensation of an expert for his time spent in deposition is mandatory. *See id.* Compensation is mandatory "to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *United States v. City of Twin Falls*, 806 F.2d 862, 879 (9th Cir. 1986). In addition, the rule requires that 1) the costs of the expert may not be imposed if doing so would result in manifest injustice; and 2) the expert's fees must be reasonable. *See id.*; *EEOC v. Johnson & Higgins, Inc.*, No. 93 C 5481, 1999 WL 32909, at *4 (S.D.N.Y. Jan. 21, 1999).

According to the advisory committee's notes and the language of Rule 26(b)(4)(C), an indigent party may be relieved of the shifting nature of the expenses when necessary and appropriate under the "manifest injustice" exception. *See* Fed. R. Civ. P. 26(b)(4)(C), advisory committee's notes. The "manifest injustice" requirement, however, is a "stringent standard," and only applies in special circumstances. *See Reed v. Binder*, 165 F.R.D. 424, 427-28 (D.N.J. 1996)

(comparing use of "manifest injustice" language in other Federal Rules of Civil Procedure to determine how to apply "manifest injustice" standard under Rule 26(b)(4)(C)). In deciding whether to relieve a party of paying shifting expenses, a court must exercise restraint while balancing the respective hardships of doing justice to parties and the need to maintain orderly and efficient procedural arrangement. *See id.*

The Magistrate Judge found that defendant does not qualify for relief under this rule as an indigent party. Judge Keys declined to relieve the defendant of his responsibility because of the continuing uncertainty regarding his financial resources. Defense counsel's eleven-hour deposition of plaintiff's experts apparently with full knowledge that they intended to assert defendant's alleged destitute condition when billed for the costs of the same also cause Judge Keys to question the reliability of defendant's representations regarding his destitute financial condition. In short, Judge Keys had good reason to question the accuracy, at least, of defense counsel's representations.

Defendant asserts that it is unfair to assess fees against a destitute party, implying that it would be manifest injustice to force defendant to pay expert fees. Moreover, defendant contends that the expense should be put off for a later date because it does not prejudice the plaintiff. The defendant, however, does not give any further support for his assertion. The Court has reviewed the Magistrate Judge's finding, and agrees that there is not enough evidence to meet the stringent standard of "manifest injustice" to relieve defendant of his duty to pay plaintiff's expert fees. The defendant and his counsel's decision to depose the experts for eleven hours and defendant's failure to establish adequately his financial status does not give the Court a sufficient basis to relieve defendant of his obligation.

In order to determine the reasonableness of a fee, the court considers seven factors: 1) the witness' area of expertise; 2) the education and training that it required to provide the expert insight which is sought; 3) the prevailing rates of other respected available experts; 4) the nature, quality and complexity of the discovery responses provided; 5) the fee actually charged by the expert on related matters; and 7) any other factor likely to assist the court. *See McClain v. Owens-Corning Fiberglas Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996). Plaintiff in this case has the burden to demonstrate that its expert rate of $600 is reasonable, and if the parties provide little evidence to support their interpretation of a reasonable rate, the court may use its discretion in setting the reasonable rate. *See Wilcox v. Sec'y of Dep't of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Feb. 14, 1997).

The Magistrate Judge concluded that the $600 expert rate requested by plaintiff is an excessive hourly rate and recommended that a rate of $250 per hour would be more reasonable, for a total of $2,750 for the eleven hours of expert testimony. Defendant objects to the Magistrate Judge's finding and asserts that $250 is still excessive and that a more reasonable fee would be $150 an hour. Defendant suggests the experts themselves testified during their deposition that $150 was their normal rate. Defendant does not, however, offer any argument as to why it would be "more reasonable" other than the defendant's alleged destitute state.

As Judge Keys pointed out in his report, there is scant case law instructing us how to determine a reasonable fee. *See McClain*, 1996 WL 650524, at *4 (reducing physician's requested fee $400 to $250 even though his credentials went unchallenged); *Mathis v. NYNEX*, 165 F.R.D. 23, 26 (E.D.N.Y. 1996) (upholding $250 rate); *Bowen v. Monahan*, 163 F.R.D. 571, 573 (D. Neb. 1995) (granting fees at $300 based on combination of all background factors);

*Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 (S.D. Iowa 1992) (reducing engineering expert's requested hourly rate of $300 to $250 where plaintiff claimed he was "internationally known" and "leading authority" in his field); *Goldwater v. Postmaster Gen. of U.S.*, 136 F.R.D. 337, 340 (D. Conn. 1991) (reducing requested hourly fee $350 to $200 per hour); *Hurst v. United States*, 123 F.R.D. 319, 321 (D.S.D. 1988) (finding $125 expert fee reasonable); *Anthony v. Abbott Labs.*, 106 F.R.D. 461, 465 (D.R.I. 1985) (holding that $250 per hour fee as outermost periphery of sustainable awards and $400 as excessive); *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 955-56 (1st Cir. 1984) (holding that Harvard professor was not entitled to be compensated at requested rate of $275 per hour).

We find it difficult to assess the appropriateness of Judge Keys' ruling due to the limited analysis in the report regarding the specific factors to consider and the scarcity of case law analysis to guide a more in-depth review of plaintiff's claimed fees. Notwithstanding these difficulties, we agree with Judge Keys' finding that the plaintiff did not meet its burden in establishing the reasonableness of the claimed $600 hourly rate for experts. Rule 26 only authorizes fees at levels that do not burden the plaintiff's efforts to hire quality experts or prevent defendants from engaging in allowable discovery. *See Mathis*, 165 F.R.D. at 24. The court in *Magee* notes that $350 hourly rate is significantly higher than expert psychiatric fees deemed reasonable by other courts. *See Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 646 (E.D.N.Y. 1997). Based on the Court's review of the case law as well as the totality of the circumstances in this case, the Magistrate Judge's recommendation that a reasonable fee in this case would be $250/hour is adopted, and defendant is ordered to pay plaintiff a total $2,750 for

the eleven hours that the defendant spent deposing the experts in accordance with Rule 26.[16]

As a sanction for defendant and defense counsel's failure to pay expert fees without court intervention, the Magistrate Judge recommended that defense counsel be held jointly and severally liable for the permitted expert fees. In his objections to Judge Keys' recommendation of this sanction, defendant argues that: 1) plaintiff's Motion for Additional Sanctions was deficient, without the inclusion of a proper certification of good faith; 2) the Magistrate Judge lacked jurisdiction to enter a sanctions order without a prior court order; and 3) the imposition of joint and several liability on defense attorneys for the expert fees is unfair, unprecedented in this Circuit, and based on an inaccurate view of the defendant and defense counsel's relationship.

Defense counsel asserts that the motion does not include a certification of plaintiff's good faith attempt to secure payment of expert fees without court action under Rule 37(a). Neither the text of the Federal Rule nor the advisory committee's notes define the type of effort which fulfills the requirement that counsel confer in an attempt to negotiate a resolution of a disclosure or dispute before filing a motion to compel. *See* Moore's Fed. Pract. §37.05[4], at 37-32. Most local rules govern the amount of negotiation necessary to fulfill the informal resolution requirement. *See id.* at 37-31.

Under Local General Rule LR 37.2, all discovery motions shall include a "statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel attempts to engage in such consultation were

---

[16]In his report and recommendation, Judge Keys denied the payment of the expense of preparation time by plaintiff's experts. Neither defendant nor plaintiff object to this ruling, and therefore, the Court adopts the Magistrate Judge's recommendation.

unsuccessful." It is clear from the court transcript dated January 5, 2000 that plaintiff attempted to negotiate with opposing counsel regarding expert fees. (01/05/00 Tr. at 20.) In fact, in open court, plaintiff noted that by the end of that day defendant was supposed to inform plaintiff whether defendant "would or would not pay the expert witness fees." (01/05/00 Tr. at 20-21.) Local Rule 37.2 further requires that "where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation." LR 37.2. In plaintiff's Motion to Compel and for Sanctions filed on January 10, 2000, plaintiff in ¶ 4-5 directly states his interaction with opposing counsel prior to filing the motion as evidence of his attempt to accord. Taking into account defendant's prior conduct we find that plaintiff adequately complied with Rule 37 certification requirement and Local Rule 37.2.

Further, in contrast to defendant's assertions, a court may issue sanctions for failure to comply with Rule 26 under Rule 37(a)(3) and (4) and under its inherent powers, without a court order. *See* Fed. R. Civ. P. 37(a)(3), (4). Motions to Compel Discovery under Rule 37(a) permit sanctions if even though no prior court order compelling discovery has been entered. *See* Fed. R. Civ. P. 37(a); Moore's Fed. Pract. § 37.40, at 37-59. Defendant has failed to respond adequately or comply with a discovery rule directing payment of plaintiff's expert fees.

Although motions to compel limit sanctions to the expenses the moving party incurred in making the motion, the court has broader discretionary powers to impose sanctions in order to address disruptive tactics in the discovery process. As noted earlier, courts possess an independent power to discipline attorneys who appear before them. *See Chambers v. NASCO,*

*Inc.*, 501 U.S. 32, 43 (1991). Certain implied powers are necessary for the courts to function as an institution, and for this reason, courts are vested with power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.*, 501 U.S. at 44. Courts have sanctioned litigants for discovery abuses under their inherent power when the record reflects a pattern of behavior demonstrating a bad faith effort to thwart the other party's discovery efforts. *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d. Cir. 1998).

In this case, the Court finds that there is no need for a formal prior order commanding the defendant to pay expert fees. We find under the Court's inherent powers and Rule 37(a)(3) and (4), that the defendant's course of conduct constitutes a blatant refusal to comply with his obligations to plaintiff as is mandated by Rule 26(b)(4)(C)(i) and by counsel's own representation to the Court on January 5, 2000 that defendant was obligated to pay expert fees. Defendant's conduct in refusing to pay for expenses he occasioned violates the integrity of the discovery process. Thus, defendant is independently obligated to pay expert fees under the Federal Rules of Civil Procedure and under his representation to the Court.

Defendant also argues that the imposition of joint and several liability for their client's failure to pay expert fees unfairly burdens counsel and penalizes defense counsel for representing an indigent client. Counsel claims that Judge Keys' recommendation to hold defense counsel jointly and severally liable due to their knowledge of client's destituteness, "fl[ies] in the face" of the Magistrate Judge's finding that the defendant is not destitute. Defense counsel further alleges that its representation to the Court that it would pay their client's sanction for his deposition only was a mere attempt to resolve the matter threatening to be the focus of the rest of the case.

According to defense counsel, it was not an offer to accept responsibility of all of defendant's costs, and even so, the limited offer was rejected by the Magistrate Judge when the sanction was not decreased as requested by defense counsel in exchange for immediate payment.

Contrary to the defendant's assertions, the Court finds that defense counsel made a representation to the Court, in open court, that they would "foot the bill" for the sanctions at issue. And indeed, the determination to take an 11 hour expert deposition knowing full well that his client intended to claim an inability to pay for the same without first seeking either an agreement with opposing counsel or the court's sanction is a determination that an attorney should be held responsible for.

Based upon their past business relationship Judge Keys concluded that defendant and defense counsel had a "symbiotic relationship." While defense counsel reject that they have a "symbiotic relationship" with their client, the Court concludes the evidence overwhelmingly supports Judge Keys' conclusion. Defense counsel asserts that defendant acted only as a "reader of an evidence deposition" and "informal" expert for occasional comments, and was not an expert in the *D'Acquisto* case. Like the Magistrate Judge, however, the Court views defense counsel's assertions with suspicion as it is evident from the deposition of the defendant and hearings before Judge Keys that defense counsel formerly used the defendant as a witness in his professional capacity. This Court and the Magistrate Judge find it extremely odd that defense counsel would utilize the defendant in his profession capacity, claim to not pay him for his professional services, while at the same time asserting that he is mentally unstable and has no money. Such contradictions are inexplicable and only server to damage defense counsel's credibility– at least with regard to defendant and counsel's true relationship.

Under Illinois agency law, the relationship between an attorney and client is of agent and principal. *See Horwitz v. Holabird & Root*, 312 Ill. App. 3d 192, 196 (1st Dist. 2000). Generally, where an agent enters into a contract with another and discloses both his agency status and the name of the principal, or when the party dealing with the agent knows the agent is acting for his principal, the agent is not liable. *See Triangle Sign Co. v. Weber, Cohn & Riley*, 149 Ill. App. 3d 839, 843 (1st Dist. 1986). However, there are exceptions to this rule. An agent can be held liable for principal's actions when "he agrees to become personally liable." *Storm & Assocs., Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1053 (1st Dist. 1998). This rule has been applied in a number of cases involving attorneys. *See id.* at 1054; *Associated Claims Serv., Inc. v. Rinella & Rinella*, 79 Ill. App. 3d 1023, 1027-28 (1st Dist. 1979); *McCorkle v. Weinstein*, 50 Ill. App. 3d 661, 663-64 (1st Dist. 1977); *International Serv. Corp. v. Ooms*, 105 Ill. App. 2d 391, 395-96 (1st Dist. 1969); *Petrando v. Barry*, 4 Ill. App. 2d 319, 322-23 (1st Dist. 1955).

Furthermore, under Illinois law, an agent may be held liable for the actions of a disclosed principal if the agent took some active part in violating a good faith and fair dealing duty the principal owed to a third person. *See Merrill Tenant Council v. U.S. Dep't of Housing & Urban Dev.*, 638 F.2d 1086, 1095 (7th Cir. 1981); *Lance v. Employers Fire Ins. Co.*, 66 F. Supp. 2d 921, 924-24 (C.D. Ill. 1999); *McCormick v. McCormick*, 180 Ill. App. 3d 184, 207-08 (1st Dist. 1988); *Bellmer v. Charter Sec. Life Ins. Co.*, 105 Ill. App. 3d 234, 240 (4th Dist. 1982); *Grover v. Commonwealth Plaza Condo. Ass'n*, 76 Ill. App. 3d 500, 507 (1st Dist. 1979).

Due to defense counsel's conduct and relationship with the defendant in this case, it would be appropriate under Illinois law to hold them liable for their client's sanction. As discussed above, the Court finds that the defendant and defense counsel engaged in bad-faith and

willful conduct in actively delaying the discovery process. During defendant's depositions, together defendant and defense counsel actively impeded effective questioning by plaintiff's counsel through constant interruptions and unnecessary objections by both defendant and defense counsel. Furthermore, defendant and defense counsel repeatedly disobeyed the Court's orders regarding payment of sanctions for their conduct at defendant's deposition. With regard to the *D'Acquisto* documents, the Court concluded that defendant and defense counsel willfully withheld the information. Such a pattern of misconduct by both defendant and his counsel directs the Court to hold that both defendant and defense counsel were actively obstructing the discovery process. The Court holds that defense counsel, as an agent of the defendant, actively took part in violating defendant's good faith duty to the Court and opposing counsel. Such affirmative action warrants sanctioning both counsel and client.

The Court also affirms that the policy reasons that underlie the Magistrate Judge's recommendation are fully applicable to the present facts, and support our holding defense counsel jointly and severally liable. Judge Keys reasoned that in *Jenkins v. General Motors Corp*, 164 F.R.D. 318, 320 (N.D.N.Y.), *aff'd*, 101 F.3d 1392 (2d Cir. 1996), the court held that a party's counsel could be held liable for reimbursing a petitioner for expert witness fees. The Magistrate Judge rightly noted that *Jenkins* was distinguishable from the present case because, the court's holding relied mainly upon the fact that the party's counsel had previously tendered fees on behalf of their client. However, Judge Keys also was persuaded by the policy arguments that: 1) the party's counsel, as opposed to plaintiff, is in a better position to assess his client's willingness to pay; 2) it was the party's attorney who decided to depose the petitioner's experts; and 3) permitting one party to obtain discovery at the other party's expense would contravene the

purpose of Rule 26(b)(4)(C).

Defense counsel urges us to reject *Jenkins* because it is not binding authority. However, the Court, in addition to the reasons discussed above, finds *Jenkins'* policy rationale persuasive. We find that defense counsel in this case are in a better position to assess their client's willingness to pay. The Court is baffled by defense counsel's conflicting assertions that their client is destitute because of his inability to work, yet works for counsel *gratis*. Obviously, defense counsel was in the best position to assess the defendant's liability, and his readiness to pay his obligations. Knowing this, defense counsel proceeded to depose plaintiff's experts for eleven hours. To permit defendant to obtain discovery at plaintiff's expense in this manner, would contravene the purpose of Rule 26(b)(4)(C). Thus, the Court finds all of the policy rationales in *Jenkins* specifically applicable to the case at hand.

Defense counsel and the defendant's unique relationship, defense counsel's affirmative action in violating court orders, defense counsel's representations to the Court, as well as policy reasons and the support of Illinois agency law lead the Court to conclude that joint and several liability is mandated under the circumstances and would not be unfair to defense counsel. Accordingly, the Court affirms the Magistrate Judge's recommendation that defense counsel be held jointly and severally liable for the defendant's payment of plaintiff's expert fees.

Thus, the defendant is directed to pay plaintiff's expert fees at $250 an hour for the eleven hour deposition for a total of $2,750, to be paid by the defendant directly to the plaintiff *within seven days* of the date of this order. Defense counsel is jointly and severally liable for payment of these fees.

## IV. NOVEMBER 21, 2000 REPORT AND RECOMMENDATION

### A. Standard of Review

The Magistrate Judge recommends that the Court stay defendant's Motion for Summary Judgment and all defendant's requests for affirmative relief until defendant complies with all the Court's orders as a sanction for the defendant's protracted failure to comply with the Court's order dated November 18, 1999 that directed payment of $1,840.08 to plaintiff. Magistrate judges are only authorized to make decisions on nondispositive matters that have independent effect in order to assure that magistrate judges do not dispose of the merits of any civil case without the parties' consent. *See Alpern*, 38 F.3d at 935. Summary judgment is specifically excepted from magistrate judges' authority to decide pretrial matters under 636(b)(1). *See* 28 U.S.C. § 636(b)(1). A stay of defendant's summary judgment motion conditioned on the payment of sanctions may have the practical effect of disposing of this case. Thus, the Magistrate Judge's recommendation requires *de novo* review under Rule 72. *See* Fed. R. Civ. P. 72(a), (b).

### B. Analysis

Under Rule 37(b)(2)(C), a court may sanction a party for failure to comply with a court order by "staying further proceedings until the order is obeyed." Fed. R. Civ. P. 37(b)(2)(C). A judge may also mete out sanctions as severe as dismissing action against the disobedient party. *See id.*; *Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620 (7th Cir. 1982). The district judge is entrusted with broad discretion in choosing an appropriate discovery sanction. *See id.* As discussed above, a sanction under Rule 37 should be proportionate to the

circumstances regarding the failure to comply with discovery. *See Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). The sanction should reflect the culpability of the delaying party and seek to prevent prejudice to the other party. *See Tamari v. Bache & Co. (Lebanon), S.A.L.*, 729 F.2d 469, 473 (7th Cir. 1984).

In his Report and Recommendation, the Magistrate Judge recommends that defendant's Motion for Summary Judgment be stayed until defendant has complied with the November 18, 1999 court order, and that all defendant's requests for affirmative relief be denied until all the Court's orders have been complied with by the defendant Although Rule 37 provides for such a sanction, we do not believe that such a measure will be helpful at this time. We understand fully the frustration that Judge Keys and plaintiff have endured due to defendant and defense counsel's bad faith and willful misconduct. However, we fear that such a sanction will only serve to further prolong this case. In fact, a stay would not be an effective enforcement tool and could operate to defendant's advantage. *See, e.g. Bell v. United States*, 31 F.R.D. 32, 36 (D. Kan. 1962) (denying plaintiff's motion to stay based on defendant's failure to produce documents noting that stay would serve no purpose under the circumstances). In accordance with this opinion, defendant and defense counsel will have complied with this Court's direct orders of specific amounts of payment *within seven days* of the date of the opinion, including the sanction amount of $1,840.08 for defendant's deposition and the expert witnesses' fee amount of $2,750 to be paid to plaintiff and the sanction amount of $300 for misconduct under section 1927 to be paid to the Clerk of the Court. Accordingly, since the majority of the sanctions and the expert fee amount will be paid *within seven days* of the issuance of this order, a stay of the proceedings will not be necessary. Thus, the Court denies the Plaintiff's Motion to Strike

Defendant/Counter-Plaintiff's Motion for Summary Judgment.

## CONCLUSION

For the reasons set forth above, the Court affirms all recommendations in Magistrate Judge Arlander Keys' September 22, 2000 Report and Recommendation and thus hereby grants in part and denies in part the Motion to Compel and Motion for Sanctions [doc. nos. 99-1, 99-2] and grants in part and denies in part the Motion for Additional Sanctions [114-1]. The Court declines to adopt the Magistrate Judge Keys' November 21, 1999 Report and Recommendation and thus denies plaintiff's Motion to Strike defendant's Motion for Summary Judgment [146-1]. Accordingly, defendant's motion to rescind order to pay sanctions is denied [158-1].

With regard to the Motion for Additional Sanctions, specifically for the failure to produce the *D'Acquisto* records, the Court sanctions defendant by factually holding that the "defendant repeatedly attended the *D'Acquisto* proceedings in public and that he provided medical consultation to defense counsel."

The Court directs defense counsel to tender to plaintiff $1,840.08 for defendant's misconduct during his deposition under the Motion for Additional Sanctions. With regard to the Motion to Compel and Motion for Sanctions, the defendant is directed to pay $2,750 for expert fees directly to plaintiff. Defense counsel is jointly and severally liable for payment of these fees. The Court also orders defense counsel to pay a sanction of $300 to the Clerk of the Court pursuant to 28 U.S.C. § 1927. All payments of these sanctions and expert fees must be paid to the plaintiff and the Clerk of the Court *within seven days* of the date of issuance of this opinion.

In accordance with this opinion, defendant and defense counsel are ordered to pay

43

attorneys' fees and costs to plaintiff for preparation of plaintiff's Motion for Additional Sanctions. Additionally, the Court sanctions defense counsel under 28 U.S.C. § 1927 and directs that defense counsel be liable for two missed court appearances regarding these matters on September 3, 1999 and November 15, 1999 by paying plaintiff's attorneys' fees. The Court directs plaintiff to submit a fee petition to this Court regarding plaintiff's fees and costs for their Motion for Additional Sanctions and plaintiff's fees for the two missed court appearances. In accordance with local rules, the Court directs plaintiff and defendant to confer and meet in good faith to agree on fees that should be awarded prior to plaintiff's filing of the fee motion.

If the defendant and defense counsel fail to comply with any of the orders in this opinion, the Court reserves the right to impose further sanctions.

**SO ORDERED.**

ENTERED: 3/19/07

HON. RONALD A. GUZMAN
**United States Judge**